Filed 5/24/19

CERTIFIED FOR PARTIAL PUBLICATON[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DANE-ELEC CORPORATION, USA, | |
| Plaintiff, Cross-Defendant and Respondent, | G055312 (Consol. with G055784) |
| v. | (Super. Ct. No. 30-2015-00789866) |
| NESSIM BODOKH, | O P I N I O N |
| Defendant, Cross-Complainant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Nathan R. Scott, Judge. Affirmed in part, reversed in part, and remanded. Motion for Judicial Notice. Granted.

Tira Law APC and Patrick R. Tira for Defendant, Cross-Complainant and Appellant.

Law Offices of Wade & Lowe and Richard W. Miller for Plaintiff, Cross-Defendant and Respondent.

\*          \*          \*

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and II of the Discussion section.

**INTRODUCTION**

Labor Code section 218.5, an attorney fee-shifting statute in actions for nonpayment of wages, prohibits a prevailing party employer from recovering attorney fees unless the trial court finds the employee brought the wage claim in bad faith. This appeal presents an issue regarding the effect of Labor Code section 218.5 on a prevailing party employer's right to recover contract-based attorney fees from an employee. Specifically, we address whether an employer may recover attorney fees incurred in successfully defending a wage claim, found not to have been brought in bad faith, when the wage claim was inextricably intertwined with a contract claim for which the employer would otherwise be contractually entitled to recover attorney fees. We partially publish our opinion to address this issue of first impression.

We hold that unless the trial court finds the wage claim was brought in bad faith, Labor Code section 218.5, subdivision (a) (section 218.5(a)) prohibits, as a matter of law, an award of attorney fees to a nonemployee prevailing party for successfully defending a wage claim that is inextricably intertwined with a claim subject to a contractual prevailing party attorney fees provision. To the extent the wage claim and the contract claim are inextricably intertwined, section 218.5(a)'s prohibition on recovering attorney fees controls over the contractual attorney fees provision.

In this case, Dane-Elec Corporation USA (Dane Corp.) prevailed against Nessim Bodokh, its former chief executive officer, on a complaint to recover on a promissory note and defeated Bodokh's cross-complaint to recover allegedly unpaid wages. The trial court granted Dane Corp.'s motion to recover attorney fees based on an attorney fees provision in the promissory note. The court found that Bodokh had not brought the wage claim in bad faith and declined to award Dane Corp. attorney fees incurred solely in connection with the wage claim. But the court awarded Dane Corp. attorney fees incurred in defending Bodokh's wage claim that were inextricably

2

intertwined with the contract claim. Bodokh appealed from the judgment and the order granting Dane Corp.'s motion for attorney fees.

We reverse the order granting Dane Corp.'s motion for attorney fees and remand. Based on our holding, we conclude that under section 218.5(a) Dane Corp. may not recover attorney fees to the extent the wage claim and the breach of contract claim were inextricably intertwined. We remand for the trial court to recalculate the amount of attorney fees to be awarded to Dane Corp.

For reasons explained in the unpublished portions of the opinion, we affirm the judgment in favor of Dane Corp. The trial court did not err by denying Bodokh's request for a statement of decision and substantial evidence supported findings necessary to uphold the judgment.

## FACTS

### I.

### Background

In the 1980's, Bodokh and David Haccoun founded Dane-Elec Memory (Dane Memory), a business that produced and sold computer memory and data storage. Bodokh and Haccoun later formed Dane Corp., which is a Delaware corporation based in Irvine. Before June 18, 2013, Dane Memory wholly owned Dane Corp. Bodokh and Haccoun jointly owned more than 50 percent of Dane Memory's outstanding shares. Bodokh served as Dane Memory's chief executive officer, and Bodokh and Haccoun constituted Dane Memory's board of directors.

Bodokh is a citizen of, and resides in, France. He did not have a United States work visa. Bodokh was not on Dane Corp.'s payroll; instead, Dane Corp. treated him as an independent contractor and paid him "executive compensation" by wire transfer directly to his personal business account. Nothing was withheld from his compensation for federal, state, or French income taxes.

## II.

## The Promissory Notes

Sometime in late 2007 or early 2008, Bodokh learned of an investment opportunity in a financial institution called Cross River Bank. The investment called for Bodokh and Haccoun each to purchase $500,000 in shares of Cross River Bank stock. Jeffrey Jacobs, Dane Corp.'s corporate counsel, looked into "the best way" for Bodokh and Haccoun to make the investment. Jacobs considered, and ultimately recommended, that Dane Corp. make corporate loans to Bodokh and Haccoun and to document the loans with promissory notes.

On January 12, 2008, Dane Corp.'s board of directors (which was Bodokh and Haccoun) approved making loans of $500,000 each to Bodokh and Haccoun. The minutes of the board of directors meeting includes a resolution authorizing the loans. On January 16, 2008, Bodokh signed a promissory note for $500,000 in favor of Dane Corp. (the Promissory Note). The Promissory Note had an interest rate of 5 percent annually and required repayment in monthly installments of $10,000 for 50 consecutive months beginning on February 1, 2009. The Promissory Note had a term stating the note may be amended, discharged, modified, changed or terminated only by an instrument in writing signed by both parties.

The Promissory Note was maintained in Dane Corp.'s financial records as a personal loan to Bodokh from Dane Corp. Bodokh used the $500,000 in loan proceeds to purchase common stock in Cross River Bank. The value of the shares at the time of trial was $3.5 million. In May 2009, the Promissory Note was amended to extend the time for repayment to October 1, 2009.

In December 2009, Dane Corp. received an initial distribution of over $13.9 million from settlement in a class action called *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation* (DRAM Settlement). At a meeting on December 28, 2009, the Dane Corp. board of directors agreed to compensate Bodokh with a one-time bonus

4

of $1 million, from which $400,000 was used to pay down the Promissory Note. The minutes of the meeting state: "Mr. Bodokh and Mr. Haccoun have agreed to respectively repay the amount of $400,000.00 US dollars to [Dane] Corp[.] for each respective promissory note[], leaving a remaining balance of $100,000.00 US dollars. It has been agreed that the remaining balance of $100,000.00 US dollars will be reflected in an amendment to the written promissory notes that will be executed by Mr. Bodokh and Mr. Haccoun. It is further agreed that Mr. Bodokh and Mr. Haccoun will be required to repay the remaining $100,000.00 balance starting on the 1st day of September 2010 in equal monthly installments of $5,000.00 US dollars for a total of forty consecutive months."

Bodokh made none of the payments toward the balance remaining on the Promissory Note. On April 25, 2012, a renewed promissory note (the Renewed Promissory Note) was made to reflect the $100,000 balance owed by Bodokh. The Renewed Promissory Note extended the due date to January 1, 2013 and required Bodokh to pay $2,500 for 36 consecutive months and the remaining balance on the 37th month.

Bodokh made none of the payments required under the Renewed Promissory Note. On April 18, 2013, another renewed promissory note (the Second Renewed Promissory Note) was made. It had a principal sum of $100,000, extended the payment due date to January 1, 2014, and had the same term as in the prior notes requiring all amendments, modifications, and changes to be in writing. The $100,000 balance remained unpaid.

### III.

### Reduction in Bodokh's Compensation

Beginning in 2009, Dane Corp., as well as Dane Memory, suffered financial difficulties. As a consequence, Dane Corp., at Bodokh's direction, implemented a payment reduction plan (the PRP) requiring all salaried employees to accept a pay reduction until the company returned to making a profit, at which time the employees would be paid retroactively. In 2009 or 2010, Bodokh's monthly compensation was

5

reduced from $10,000 to $8,500, and in June 2011, his monthly compensation was reduced to $6,700.

Dane Memory sought protection under the Commercial Code of France through a proceeding in the French Commercial Court. In September 2011, Dane Memory entered into a Memorandum of Understanding Concerning Conciliation (the Conciliation Agreement) with its creditors in order to restructure its debts. Bodokh signed the Conciliation Agreement individually and on behalf of Dane Memory. The Conciliation Agreement stated Bodokh "agree[s] to reduce [his] monthly compensation received from [Dane Corp.] to **$6,700** gross . . . as of June 1, 2011."

In October 2011, Dane Memory asked James Sinkewicz, Dane Corp.'s then chief financial officer, to determine Bodokh's compensation net after taxes. Sinkewicz proposed adding Bodokh to Dane Corp.'s payroll effective October 1, 2011 and paying his compensation net after taxes. But after receiving a copy of the Conciliation Agreement from Dane Memory, Sinkewicz told Mohammed Yaqub, then Dane Corp.'s controller, that Dane Corp. had to comply with that agreement.

On November 28, 2011, Dane Memory's general counsel, Valerie Atlan, wrote to Jacobs, Haccoun, and Bodokh: "Please be informed, from now and until new information, the remunerations from David [Haccoun] and Nessim [Bodokh] will be at 6700 USD on DANE CORP." A few days later, Sinkewicz asked Atlan whether "this is net after taxes, or before deduction of taxes?" Atlan replied, "The remuneration is net after taxes." Dane Corp. did not follow Atlan's instruction to adjust (gross up) Bodokh's compensation to account for taxes because doing so would conflict with the Conciliation Agreement. Neither the Dane Corp. board of directors nor its chief financial officer ever authorized "gross[ing] up" Bodokh's compensation to account for withheld taxes.

Although Dane Corp. had not received the additional DRAM Settlement payment by the end of 2011, Dane Corp. recorded income of $285,000 for its share of

6

that settlement. Dane Corp. treated the $285,000 as accrued income in order to avoid a default with a creditor bank.

In early 2013, Dane Memory entered formal reorganization proceedings in France. In June 2013, Dane Memory liquidated its assets. Gigastone, S.A., acquired all of the shares of Dane Corp. stock, and Bodokh resigned from his positions at Dane Corp.

In May 2014, Dane Corp. received an additional payment from the DRAM Settlement of over $247,000. Dane Corp. recovered financially and became profitable again in 2014. Dane Corp. paid its remaining employees their withheld wages, plus 10 percent interest, and restored their salaries to pre-PRP levels. Employees who had voluntarily left Dane Corp. were not paid.

## PROCEDURAL HISTORY

Dane Corp.'s complaint against Bodokh asserted one cause of action—for breach of the Second Renewed Promissory Note. Bodokh's amended cross-complaint asserted causes of action for failure to pay wages, waiting time penalties under Labor Code section 203, and unfair competition. On appeal, Bodokh does not make any argument or cite legal authority directed to the claim for unfair competition.

Following a bench trial, the trial court found in favor of Dane Corp. and against Bodokh on both the complaint and the cross-complaint. After the trial court made its decision, Bodokh requested a statement of decision. The court denied the request on the ground the trial had lasted less than eight hours. Judgment was entered in favor of Dane Corp.

Dane Corp. brought a motion for attorney fees in the amount of $59,637 based on an attorney fees provision in the Second Renewed Promissory Note. Bodokh opposed the motion. The trial court granted Dane Corp.'s motion and awarded Dane Corp. $50,959.50. The court disallowed $8,677.50 in attorney fees incurred solely in

7

defending Bodokh's wage claim. An amended judgment incorporating the attorney fees award was entered.

Bodokh filed two notices of appeal: one from the judgment and the other from the order granting Dane Corp.'s motion for attorney fees and the amended judgment. We ordered the two appeals consolidated for all purposes.

## DISCUSSION

## I.

## Bodokh Failed to Make a Timely Request for a Statement of Decision.

A. *Trial Was Under Eight Hours in Length*

Bodokh contends the trial court erred by denying his request for a statement of decision. We conclude trial court did not err because the request was untimely.

A request for a statement of decision "must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision." (Code Civ. Proc., § 632.) If counsel do not present opening statements, trial is deemed to commence "at the time of the administering of the oath or affirmation to the first witness, or of the introduction of any evidence." (*Id*., § 581, subd. (a)(6).)

"[T]he eight-hour rule in section 632 requires a simple and obvious mode of timekeeping that everyone, including attorneys, can keep track of. This means that, for purposes of keeping time of trial under section 632 in civil proceedings other than administrative mandamus . . . , the time of trial means the time that the court is in session, in open court, and also includes ordinary morning and afternoon recesses when the parties remain at the courthouse." (*In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 979-980.)

8

The trial court calculated the trial to have lasted seven hours and 40 minutes. Bodokh calculates trial to have lasted eight hours and 15 minutes. He contends the discrepancy arises because the trial court did not include closing arguments in calculating the length of trial. The discrepancy arises because Bodokh's calculation is based on trial commencing at 10:25 a.m. Our review of the record leads us to conclude the trial commenced at 11:07 a.m., not 10:25 a.m.

The court clerk kept track of commencement times and lunch breaks and recorded them in the court minutes. The court reporter kept track of the adjournment times. The minutes of the first day of trial include the entry that trial commenced at 10:25 a.m. when the parties appeared, argued motions in limine, and discussed exhibits and time estimates. But the court minutes also record that the first witness, Yaqub, was sworn at 11:07 a.m. Because counsel did not give opening statements, and no exhibits were admitted before Yaqub was sworn, trial is deemed to have commenced at 11:07 a.m., not at 10:25 a.m. (Code Civ. Proc., § 581, subd. (a)(6).)

As a consequence, trial lasted seven hours and 33 minutes. The trial court's calculation of seven hours and 40 minutes was remarkably close to the actual trial time. Trial was under eight hours, and Bodokh did not request a statement of decision before the matter was submitted; therefore, the trial court did not err by denying Bodokh's request for a statement of decision.

Bodokh argues the trial court should have included the entire morning session in calculating the length of trial. He cites *Miller v. Marina Mercy Hospital* (1984) 157 Cal.App.3d 765 for the proposition that trial may start earlier than the events listed in Code of Civil Procedure section 581, subdivision (a)(6). *Miller* is inapposite. In that case, the plaintiff attempted to voluntarily dismiss the complaint without prejudice after the defendant filed a motion for summary judgment based on requests for admission that had been deemed admitted. (*Miller v. Marina Mercy Hospital, supra*, 157 Cal.App.3d at p. 767.) The Court of Appeal affirmed summary judgment on the ground

9

the plaintiff's right to dismiss without prejudice terminated upon notification the requests for admission had been deemed admitted because, at the time, trial was deemed to have commenced. (*Id.* at pp. 768-770.)

*Miller* addressed the issue whether a proceeding other than a trial may constitute a "trial" for purposes of determining whether a plaintiff has the right to voluntarily dismiss a complaint without prejudice. When, as in this case, court has convened, a formal bench trial has been conducted, and no opening statements were made, the trial is deemed to have commenced when the first witness was sworn. (Code Civ. Proc., § 581, subd. (a)(6).)

B. *Effect on Standard of Review*

"A party's failure to request a statement of decision when one is available has two consequences. First, the party waives any objection to the trial court's failure to make all findings necessary to support its decision. Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.)

In applying the substantial evidence standard, our task is to examine the entire record in the light most favorable to the judgment and determine whether there is evidence that is reasonable, credible, and of solid value to support the judgment. (*Ferguson v. Yaspan* (2014) 233 Cal.App.4th 676, 682.) We resolve all conflicts in the evidence in favor of the judgment, do not reweigh the evidence, and are bound by the fact finder's credibility determinations. (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613.) As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the judgment and disregard contrary evidence and inferences. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) The test is whether the record contains substantial evidence in favor of the respondent, and "[i]f this

'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld." (*Ibid.*)

## II.

### Substantial Evidence Supports the Judgment on Dane Corp.'s Claim to Enforce the Second Renewed Promissory Note.

Bodokh argues a condition to enforcing the Second Renewed Promissory Note was Dane Corp.'s failure to receive additional DRAM settlement proceeds. According to Bodokh, that condition, though not stated in the note, was proven by extrinsic evidence of a parol term. He argues the trial court erred by failing to consider this extrinsic evidence and by failing to address whether the $500,000 loan consisted of advanced wages.

As Bodokh did not request a statement of decision, we presume the trial court made any and all findings necessary to support the judgment. As a consequence, we infer the trial court found there was no condition to enforcing the Second Renewed Promissory Note. Substantial evidence supported that finding. None of the promissory notes included the term that enforcement was conditioned on receipt of DRAM settlement proceeds. Such a condition is not mentioned in any of the minutes of Dane Corp. board of directors meetings or in any of the e-mail communications received into evidence. Yaqub testified he was not aware of any agreement, "written or otherwise," that the balance of the Renewed Promissory Note or Second Renewed Promissory Note would be paid from future DRAM settlement proceeds. Haccoun made promissory notes with same terms and paid them back in full.

Bodokh asserts the parol condition was established by his own testimony that Haccoun, Michel Hassan, and Jacobs told him they agreed, on behalf of Dane Corp., that DRAM settlement proceeds would be applied to the Second Renewed Promissory Note. The trial court found the parol evidence was "just not persuasive." The trial court

11

was the judge of witness credibility and impliedly found Bodokh was not credible in his testimony that there was an agreement to repay the loan out of the DRAM settlement proceeds. We are bound by the trial court's credibility determinations. (*Citizens Business Bank v. Gevorgian, supra,* 218 Cal.App.4th at p. 613.)

Bodokh also points to evidence of the parties' course of dealing, in particular, that $1 million from the first DRAM settlement proceeds were paid to him as a bonus and, from that bonus, $400,000 was applied to the note. An inference might be drawn from that evidence that the Second Renewed Promissory Note was to be paid from future DRAM settlement proceeds. The trial court rejected that inference and found "the notion that Mr. Bodokh doesn't have to repay the $100,000 and Dane[ Corp.] will get it from somewhere else just isn't credible." The standard of review would compel us to reject that inference, even if reasonable, and accept only inferences favorable to the judgment.

### III.

### Substantial Evidence Supports the Judgment on Bodokh's Wage Claim.

On his claim for unpaid wages, Bodokh contends: (1) Under the terms of the PRP and state law, Dane Corp. was required to compensate him retroactively for the reduction in his salary; and (2) the reduction in his salary to $6,700 was net after taxes and Dane Corp. failed to pay him the gross amount. Bodokh argues the trial court ignored undisputed evidence and failed to correctly interpret the PRP.

The PRP required all salaried Dane Corp. employees to accept a pay cut until the company returned to making a profit, at which time the employees would be paid retroactively. The trial court commented there was "no persuasive evidence" of an employment contract between Dane Corp. and Bodokh. Absent that comment, we would infer the trial court made an implied finding that Bodokh was not a salaried employee of

12

Dane Corp. (*Acquire II, Ltd. v. Colton Real Estate Group, supra,* 213 Cal.App.4th at p. 970.)

Substantial evidence supported a finding that Bodokh was not a salaried employee of Dane Corp. Bodokh is a citizen of, and resides in, France. He did not have a United States work visa. He was not considered a Dane Corp. employee and was not on its payroll. Yaqub testified Dane Corp. treated Bodokh as an independent contractor and paid him "executive compensation" by wire transfer directly to his personal business account. Nothing was withheld from this compensation for federal, state, or French income taxes. No employment contract between Bodokh and Dane Corp. appears in the appellate record. The Conciliation Agreement referred to a reduction in Bodokh's compensation, not salary.

Bodokh points to evidence that Dane Corp. referred to his compensation as "salary" and that he was physically present at Dane Corp.'s offices one to two weeks every two months. There are e-mails received into evidence that refer to Bodokh's salary, and he testified about working at Dane Corp.'s offices. But "[w]e emphasize that the test is *not* the presence or absence of a substantial conflict in the evidence. Rather, it is simply whether there is substantial evidence in favor of the respondent." (*Howard v. Owens Corning, supra,* 72 Cal.App.4th at p. 631.) There is substantial evidence in the record that Bodokh was not a salaried employee of Dane Corp. The PRP applied only to salaried employees of Dane Corp.; therefore, Bodokh was not entitled to be paid retroactively pursuant to it.

Substantial evidence also supported a finding that Bodokh's reduced compensation of $6,700 was gross, not net after taxes. Yaqub testified Dane Corp. never withheld taxes from Bodokh's compensation. The Conciliation Agreement, which Bodokh signed, stated he agreed to reduce his monthly compensation from Dane Corp. to "**6,700** gross." After receiving a copy of the Conciliation Agreement, Sinkewicz told

13

Yaqub that Dane Corp. had to comply with that agreement and could not pay Bodokh his compensation net after taxes.

Bodokh argues the trial court refused to enforce an agreement between Dane Corp. and Dane Memory to pay him $6,700 net after taxes. According to Bodokh, this agreement was memorialized by the written exchanges in November 2011 between Atlan and Sinkewicz. Atlan sent an e-mail stating that Bodokh's monthly remuneration would be $6,700. Sinkewicz asked whether that amount was net after taxes or gross. Atlan replied it was net after taxes. No evidence was presented that Atlan had authority to bind Dane Memory or instructed Dane Corp. on how to compensate Bodokh. No evidence was presented that Sinkewicz could bind Dane Corp. or that Dane Corp.'s board of directors authorized "gross[ing up]" Bodokh's salary. The trial court was free to reject evidence of an agreement and rely instead, as did Dane Corp., on the Conciliation Agreement, which required Bodokh's compensation to be gross.

**IV.**

### Section 218.5(a) Prohibited Dane Corp. from Recovering Attorney Fees for the Breach of Contract Claim to the Extent It Was Inextricably Intertwined with the Wage Claim.

Bodokh also appeals from the order granting, in part, Dane Corp.'s motion for attorney fees and from the amended judgment, which incorporates the attorney fees award.

The Second Renewed Promissory Note provides that "[i]n any action or proceeding arising out of or related to this Note, . . . the prevailing party therein shall be entitled to recover from the other party the reasonable attorneys' . . . fees . . . [and] costs . . . incurred by the prevailing party." Pursuant to this provision, Dane Corp. brought a motion under Civil Code section 1717 to recover attorney fees and costs.

The trial court found that Dane Corp. was the prevailing party because it had obtained a net monetary recovery and awarded Dane Corp. $50,959.50 in attorney

14

fees out of $59,637 sought. The court found "[Dane Corp.] has shown the awarded fees were incurred on the contract or were so inextricably intertwined with its contract claim that the court will exercise its discretion to award them." The court found Bodokh had not brought his wage claim in bad faith and, therefore, Labor Code section 218.5 barred Dane Corp. from recovering $8,677.50 of attorney fees incurred solely in defending the his wage claim.

Labor Code section 218.5 is a fee-shifting statute in actions for nonpayment of wages. The first sentence of section 218.5(a) states: "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." There is a significant limitation if the prevailing party is not an employee. The second sentence of section 218.5 (a) states: "However, if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith."

The parties do not dispute that Dane Corp. is statutorily prohibited from recovering attorney fees incurred in defending Bodokh's wage claim because the trial court found it was not brought in bad faith. (§ 218.5(a).) The parties do not dispute that Dane Corp., as prevailing party, has a contractual right to attorney fees and costs incurred in enforcing the Second Renewed Promissory Note. (Code Civ. Proc., §§ 1021, 1032, subd. (b), 1033.5, subd. (a)(10); Civ. Code, § 1717.) But what of the attorney fees incurred in defending Bodokh's wage claim to the extent it was inextricably intertwined with the contract claim?

When a claim for which attorney fees are recoverable is joined with a claim for which they are not recoverable, the usual apportionment rule was stated in *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124: "Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which

15

fees are proper and one in which they are not allowed." (*Id*. at pp. 129-130.) Thus, "[a]pportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." (*Calvo Fisher & Jacob LLP v. Lujan* (2015) 234 Cal.App.4th 608, 625-626.)

*Reynolds* addressed whether the defendants, as prevailing parties, were entitled to fees incurred on a single issue that arose out of a contract containing an attorney fees clause and another contract containing no such clause. (*Reynolds Metals Co. v. Alperson, supra*, 25 Cal.3d at p. 130.) This case presents a different situation, however, because it involves a conflict between a contractual right to attorney fees and an express statutory prohibition against awarding such fees.

The Court of Appeal, in *Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498 (*Carver*), addressed a situation in which a contractual right to attorney fees conflicted with a statutory prohibition against awarding fees to a prevailing defendant in an action under the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.). The defendant in *Carver* prevailed in an action for antitrust violations under the Cartwright Act, breach of contract, and other torts. (*Carver, supra,* at p. 501.) The trial court awarded the defendant attorney fees based on a fee provision in the contract, but deleted 65 percent of the award on the ground those fees related exclusively or by "inextricable overlap" to the Cartwright Act issues. (*Ibid.*) The attorney fees provision in the Cartwright Act (Bus. & Prof. Code, § 16750, subd. (a)) is a unilateral fee-shifting provision that allows an award to a prevailing plaintiff but prohibits an award to a prevailing defendant. (*Carver, supra,* at p. 503.)

The Court of Appeal, affirming the trial court's apportionment order, determined the public policy for the Cartwright Act's unilateral fee shifting was "to encourage injured parties to broadly and effectively enforce the Cartwright Act 'in situations where they otherwise would not find it economical to sue.'" (*Carver, supra,*

16

119 Cal.App.4th at p. 504.) The court stated: "The Legislature clearly intended to give special treatment to antitrust claims under the Cartwright Act by creating this one-way fee-shifting right for a successful plaintiff but not for a defendant who successfully defends such a claim." (*Ibid.*) In light of that public policy, the court concluded as a matter of law "the unilateral fee-shifting provision of section 16750, subdivision (a) prohibits an award of attorney fees for successfully defending Cartwright Act and non-Cartwright Act claims that overlap." (*Id.* at pp. 501, 504.) "To allow [the defendant] to recover fees for work on Cartwright Act issues simply because the statutory claims have some arguable benefit to other aspects of the case would superimpose a judicially declared principle of reciprocity on the statute's fee provision, a result unintended by the Legislature, and would thereby frustrate the legislative intent to 'encourage improved enforcement of public policy.'" (*Id.* at p. 504.)

Although section 218.5(a) is a two-way fee-shifting statute (*Shames v. Utility Consumers' Action Network* (2017) 13 Cal.App.5th 29, 38), it has the potential to become a one-way or unilateral fee-shifting provision if, as here, the trial court finds a plaintiff did not bring the wage claim in bad faith. Courts have uniformly recognized that such unilateral fee-shifting statutes "reflect a considered legislative judgment that prevailing defendants should not receive fees." (*Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1061 (*Turner*).)

The sentence in section 218.5(a) permitting a prevailing nonemployee to recover attorney fees only if the trial court finds the wage claim was brought in bad faith was added by Senate Bill No. 462 (2013-2014 Reg. Sess.). (Stats. 2013, ch. 142, § 1; see Historical and Statutory Notes, 44 West's Ann. Lab. Code (2019 supp.) foll. § 218.5, p. 204.) Bodokh has filed a motion for judicial notice of seven analyses of Senate Bill No. 462 prepared by or for several Senate and Assembly committees. Reports and analyses of legislative committees are part of a statute's legislative history and may be

17

considered in construing a statute. (*Hutnick v. United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7; *People v. Patterson* (1999) 72 Cal.App.4th 438, 443.)

The analysis by the Assembly Committee on the Judiciary sets forth the following policy for the legislation: "This bill would clarify the existing two-way fee[-]shifting provision of section 218.5 by expressly providing that where the prevailing party is a non-employee (*e.g.*, the employer), fees are to be awarded upon a judicial finding that the employee brought the action in bad faith. The reason for a higher standard of course is that wage laws reflect a fundamental policy of the state, the vindication of which is largely left to employees. The premise of this bill is that the great expense and unpredictability of exposure to attorney's fees liability is likely to chill the pursuit of potentially valid claims by employees of limited means, contrary to the important policy objectives of the statutory scheme." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 462 (2013-2014 Reg. Sess.) July 1, 2013, p. 3.) An analysis prepared by the Senate Committee on Appropriations commented: "Because this bill would restrict an employer's award of attorney's fees if it prevailed in an action for contractually agreed-upon wages, fringe benefits, or health and welfare or pension fund contributions, this bill could alter the contracting parties' agreement on attorney's fees awards and could create uncertainty for the contracting parties." (Sen. Com. on Appropriations, Analysis of Sen. Bill No. 462 (2013-2014 Reg. Sess) May 28, 2013, p. 2.)

The policy expressed by the Assembly Committee on the Judiciary—to encourage employees to effectively enforce the wage laws—is described as both "fundamental" and "important." It is also remarkably similar to the policy behind the unilateral fee-shifting provision of the Cartwright Act, which the *Carver* court concluded was strong enough to overcome a contractual attorney fees provision. Following the reasoning of *Carver,* we believe that to permit a prevailing defendant (here, Dane Corp.) to recover attorney fees incurred in defending a wage claim, which the trial court has

18

determined not to have been brought in bad faith, would frustrate the Legislature's intent by turning a unilateral fee-shifting statute into a reciprocal one.

We hold, therefore, that unless the trial court finds the wage claim was brought in bad faith, section 218.5(a) prohibits, as a matter of law, an award of attorney fees to a prevailing party for successfully defending a wage claim that overlaps with claims subject to a contractual prevailing party attorney fees provision. In light of our conclusion, Dane Corp. may not recover attorney fees in defending Bodokh's wage claim even if that claim overlaps or is inextricably intertwined with fees the breach of contract claim.

Two other decisions, though not as analogous as *Carver*, support our interpretation of section 218.5(a). In *Turner, supra*, 193 Cal.App.4th 1047, the Court of Appeal concluded a prevailing defendant is not entitled to attorney fees under a bilateral prevailing party statute for fees that were inextricably intertwined with successfully defending claims subject to a unilateral fee-shifting statute. The defendant prevailed in claims asserted under the Unruh Civil Rights Act (Civ. Code, § 51) and claims asserted under the Disabled Person Act (DPA) (*id.*, § 54 et seq.). Civil Code section 55 allows the "prevailing party" in an action for injunctive relief under the DPA to recover attorney fees. Civil Code section 52 authorizes attorney fee awards only to prevailing plaintiffs on Unruh Act claims, and Civil Code section 54.3 authorizes fee awards only to prevailing plaintiffs on claims for DPA violations. (*Turner, supra*, at pp. 1053-1054, 1057-1059.)

The Court of Appeal recognized a conflict among those attorney fees statutes when "a prevailing defendant has incurred attorney fees defending claims arising under [Civil Code] sections 52, 54.3, and 55, and those fees are inextricably intertwined." (*Turner, supra*, 193 Cal.App.4th at p. 1059.) The court resolved the conflict by holding that when the Legislature enacted the unilateral prevailing plaintiff fee-shifting provisions in Civil Code sections 52 and 54.3, it created an exception to Civil Code section 55 by implication. That exception prohibited awarding fees to a prevailing defendant for time

19

devoted to defending claims for which fees were not recoverable under Civil Code sections 52 and 54.3.  (*Turner, supra*, at p. 1054.)

In *Roman v. BRE Properties, Inc.* (2015) 237 Cal.App.4th 1040 (*Roman*), the court addressed a conflict between Government Code section 12965, subdivision (b), which is the cost-shifting provision of the Fair Employment and Housing Act (FEHA) and Code of Civil Procedure section 1032, subdivision (b), which is the general cost recovery provision in civil cases.  A recent California Supreme Court opinion had interpreted Government Code section 12965, subdivision (b) as vesting discretion in the trial court to award costs to the prevailing party.  (*Roman, supra*, at p. 1057.)  In contrast, under Code of Civil Procedure section 1032, subdivision (b), a prevailing party is entitled to costs of suit as a matter of right.  (*Roman, supra*, at p. 1057, fn. 15.)

Following "the path marked in *Turner*," the *Roman* court held: "Government Code section 12965, subdivision (b)'s exception to the mandatory award of litigation costs under [Code of Civil Procedure] section 1032, subdivision (b), implements a clear legislative goal of encouraging potentially meritorious FEHA suits. [Citation.]  Although [Code of Civil Procedure] section 1032, subdivision (b), also serves an important purpose, relieving a party whose position was vindicated in court of the basic costs of litigation, when those costs have not been increased by the inclusion of additional theories of liability to the primary FEHA claim asserted, the express public policy of Government Code section 12965, subdivision (b), controls.  Unless the FEHA claim was frivolous, only those costs properly allocated to non-FEHA claims may be recovered by the prevailing defendant."  (*Roman, supra*, 237 Cal.App.4th at p. 1062, fn. omitted.)

A fair reading of *Turner* and *Roman* is that, when necessary to vindicate an express public policy, a specific fee-shifting statute will control over a general statutory provision awarding attorney fees or costs to a prevailing party.  When attorney fees or costs have been incurred on claims subject to both statutes, the more specific fee-shifting

20

statute will govern the entire award of fees or costs. In *Turner*, the statutes awarding fees only to the prevailing plaintiff controlled over the statute awarding fees to the prevailing party, and in *Roman* the statute granting the trial court discretion to award the prevailing party costs controlled over the statute granting the prevailing party costs as a matter of right. Thus, section 218.5(a), a specific fee-shifting statute vindicating an express public policy, controls over general statutes governing contract-based attorney fees.

In a recently filed opinion, *Richmond Compassionate Care Collective v. 7 Stars Holistic Foundation* (2019) 33 Cal.App.5th 38 (*Richmond*), the Court of Appeal concluded the defendant in a Cartwright Act case could recover attorney fees under Code of Civil Procedure section 425.16, subdivision (c) after winning a special motion to strike under the anti-SLAPP statute. The court rejected the plaintiff's argument that the fee-shifting provision of the Cartwright Act, as interpreted by *Carver*, overrides the attorney fees provision of the anti-SLAPP statute and prohibited the defendant from recovering any attorney fees in a Cartwright Act case. (*Richmond, supra*, 33 Cal.App.5th at pp. 46-48.) "Although the Legislature's purpose in enacting the Cartwright Act was to encourage enforcement of the act, nothing in the law '"suggests this legislative purpose should override the Legislature's desire,"' expressed in the later-enacted [Code of Civil Procedure] section 425.16, to discourage SLAPPs." (*Id.* at p. 47.) The court concluded there was no conflict between the Cartwright Act and the anti-SLAPP statute, and "both can be applied." (*Id.* at p. 48.)

Section 218.5(a) and statutory provisions permitting recovery of contractual attorney fees cannot both be applied without creating a conflict between them. Awarding Dane Corp. prevailing party attorney fees for a contract claim that is inextricably intertwined with Labor Code claims for which section 218.5(a) prohibits recovery of the same fees would of necessity create a conflict. Moreover, in *Richmond*, the Court of Appeal addressed two statutes—the Cartwright Act and the anti-SLAPP statute—both having express and strongly-worded legislative purposes. That is not the case here. Both

21

section 218.5(a) and the statutes permitting recovery of attorney fees when provided by contract have a legislative purpose. But that of section 218.5(a) is expressly described as "fundamental" and necessary to advance an "important policy." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 462 (2013-2014 Reg. Sess.) July 1, 2013, p. 3.)

Dane Corp. requests that we award it attorney fees and costs on appeal. Dane Corp. is entitled to recover attorney fees incurred in connection with enforcing the Second Renewed Promissory Note. (*Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 927 ["'[I]t is established that fees, if recoverable at all—pursuant either to statute or parties' agreement—are available for services at trial *and on appeal*'"].) The better practice, and the one which we follow here, is to remand the case to the trial court to determine the appropriate amount of fees. (*Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1399; *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1610.) As for costs, the disposition will state that no party may recover costs on appeal.

## DISPOSITION

The order granting Dane Corp.'s motion for attorney fees and the portion of the amended judgment awarding attorney fees are reversed. The matter is remanded to the trial court to recalculate, in accordance with this opinion, the amount of attorney fees incurred at trial and on appeal to be awarded to Dane Corp. in connection with the claim

for breach of promissory note only.  In all other respects, the judgment and the amended judgment are affirmed.  Because each party prevailed in part, in the interest of justice, no party may recover costs on appeal.


                                        FYBEL, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

23