Filed 04/24/25

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 21-CV-00298

---

Elizabeth Rossetti v. Bare, Ltd. et al

---

## DECISION ON MOTIONS FOR ATTORNEYS' FEES

Following a jury trial, during which the court granted a motion for judgment under V.R.C.P. 50 and 52 on some of Plaintiff's claims and after which the jury returned a verdict for Plaintiff on the remaining claims, Plaintiff filed a Motion for Interest, Costs, Expenses, and Attorney's Fees. In response, Defendants filed a cross-motion. The court grants Plaintiff's motion in part and denies Defendants'.

Following the December 2020 termination of her employment with Defendant Bare, Ltd., Plaintiff filed this action. In her original complaint, she asserted claims arising out of that termination against both Defendants. Count 1 set forth claims against Bare only for payment of a contractual bonus for the year 2020 and unpaid PTO; Count 2 founded the same claims on provisions of the Vermont Employment Practices Statute, 21 V.S.A. §§ 341 & 342, and added Defendant Spano; and Count 3 set forth a claim for declaratory relief with respect to a non-compete provision in the parties' contract. Defendants answered and counterclaimed, alleging breach of the non-compete provision.

After some discovery, Plaintiff amended her complaint to assert claims for bonuses for the years 2018 and 2019; again, she asserted both contractual and statutory claims. She also added a Count 4, seeking an accounting. Before trial, the parties stipulated to the dismissal of Counts 3 and 4 and the counterclaim; the case then proceeded to trial on the contractual and statutory claims. At trial, the original claims all failed for lack of proof. The jury then returned a verdict for Plaintiff on the remaining contractual claims; on the strength of that verdict, the court granted judgment on the remaining statutory claims. These motions followed.

While the Complaint and Amended Complaint both seek attorney's fees under both contract and statute, Plaintiff's post-trial motion rests entirely on 21 V.S.A. § 347. That statute provides that an employer that fails to pay an employee wages to which he or she is due "shall forfeit to the individual injured . . . all costs and reasonable attorney's fees." As Plaintiff properly points out in her motion

papers, this provision is mandatory. And the jury's verdict establishes that Defendant Bare failed to pay wages she was due. *See* 21 V.S.A. § 341(5) (" 'Wages' means all remuneration payable for services rendered by an employee, including salary, commissions, and incentive pay."). Thus, as in a claim under the Consumer Fraud Act, "it is not within the court's discretion to determine whether to award such fees, but rather its task is to determine what constitutes reasonable fees . . . ." *L'Esperance v. Benware*, 2003 VT 43, ¶ 21, 175 Vt. 292 (citation omitted).

To determine a reasonable fee award, courts first "calculate a 'lodestar figure' representing 'the number of hours reasonably expended on the case multiplied by a reasonable hourly rate." *Walsh v. Cluba*, 2015 VT 2, ¶ 15, 198 Vt. 453 (quoting *L'Esperance*, 2003 VT 43, ¶ 22). "There is a strong presumption that this 'lodestar figure' represents a reasonable fee." *Human Rights Comm'n v. LaBrie*, 164 Vt. 237, 250 (1995) (citing *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989)). Nevertheless, a court may adjust the lodestar figure " 'upward or downward based on various factors.' " *Walsh*, 2015 VT 2, ¶ 15. "The result obtained . . . is one factor the court must consider." *LaBrie*, 164 Vt. at 251.

Here, the evidence persuades the court that both the hours and the hourly rate shown on Plaintiff's fee submissions (dated November 15, 2024, December 14, 2024, and February 8, 2025) are reasonable. These submissions yield a "lodestar" of $86,123.70. In its discretion, however, the court concludes that the result obtained here warrants a downward adjustment.

The court notes in this regard that while Plaintiff prevailed on her claims with respect to bonuses earned in 2018 and 2019, she failed even to get her claims with respect to bonus and PTO compensation for 2020 to the jury. The complete lack of success on the 2020 claims is critical. " 'Where the plaintiff has failed to prevail on a claim that is distinct in all respects from [her] successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.' " *LaBrie*, 164 Vt. at 251 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)).

The teachings of *Hensley* are particularly on point here:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

461 U.S. at 434–35 (citation and footnote omitted. Superficially, the 2020 claims appear related to the 2018 and 2019 claims. *Cf. LaBrie*, 164 Vt. at 251 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the [trial] court did not adopt each contention raised.") (quoting *Hensley*, 461 U.S. at 440). On closer inspection, however, the claims are wholly distinct, both factually and legally. The 2018 and 2019 claims are based on a mechanical application of the terms of Plaintiff's employment contract, while the 2020 claims are an assault on the validity of express limitations contained in that contract. Apart from the contract itself—with different provisions applicable to the different claims—the claims rely on entirely different legal theories and entirely different proof. To prove her 2018 and 2019 claims, Plaintiff needed to prove only Defendant Bare's "gross sales" for those years; to prove her 2020 claims, she needed to prove that she was terminated in bad faith, in an effort to deny her the payment of benefits to which she was otherwise entitled. This was reflected in the trial evidence: Plaintiff's testimony, and the testimony she elicited from Defendant Spano, focused almost exclusively on proof of a violation of the covenant of good faith and fair dealing; and while Plaintiff's expert testified as to calculations for all three years, his calculations rested on separate financial records for each year. In short, while they were tried in the same trial, the only relationship between the 2018 and 2019 claims, on the one hand, and the 2020 claims, on the other, is that they arose out of the same employment relationship. And even in that regard, they were different—the 2018 and 2019 claims arising out of the relationship itself, while the 2020 claims arose out of the manner of its termination.

While the conclusion that the court must therefore adjust the lodestar figure downward to account for the lack of success on the 2020 claims is fairly obvious, how to calculate that adjustment is less so. For reasons that the court cannot fault, counsel did not record his time in a way that allows the parsing out of efforts relating to the different claims; while counsel could surely have recorded time separately for the different claims, he did not. Thus, the court must look for some other measure to determine how much of his time was reasonably attributable to the 2018 and 2019 claims.

In this regard, the court looks to two other measures, each of which supports the conclusion that no more than 50% of the lodestar can fairly be attributed to those claims. The court notes first that more than 50% of Plaintiff's evidence at trial—calculated by witness time on the stand—went to proof of the separate 2020 claims. It notes second that the full value of those claims—again, on which Plaintiff received not a penny—was nearly double that of the 2018 and 2019 claims. While these are crude measures, they are the best available. Thus, the court concludes that reducing the lodestar by 50% is necessary to arrive at a reasonable fee for the claims on which Plaintiff prevailed.

This discount, however, does not apply to Plaintiff's claimed costs and expenses, which total $12,143.93. The court notes that over $9,000.00 of those went to Plaintiff's expert, who provided the only evidence in support of the 2018 and 2019 claims; only a small fraction of his work would properly be attributable to the 2020 claims. The remainder of Plaintiff's costs and expenses would have been incurred whether or not the 2020 claims were included in the case. Thus, the court concludes that Plaintiff is entitled to recover all of her claimed costs and expenses.

Finally, at least with regard to Plaintiff's motion, the court declines to award pretrial interest. "Prejudgment interest is 'awarded as of right when the principal sum recovered is liquidated or capable of ready ascertainment and may be awarded in the court's discretion for other forms of damage.' " *Hirchak v. Hirchak*, 2024 VT 81, ¶ 37 (quoting *Martin v. Lyon*, 2024 VT 68, ¶ 10) (further quotation and citation omitted). "[D]amages are not reasonably ascertainable where 'the parties dispute how the jury could arrive at the damages it awarded.' " *Id*. ¶ 38 (quoting *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 141 (1993)). In this case, the parties had competing experts testify as to the calculation of Defendant Bare's "gross sales" for the years at issue, and the jury could have determined that Plaintiff was not entitled to any additional wages for the 2018 and 2019 years, consistent with the testimony of Defendants' expert. Indeed, careful analysis of the financial records on which the two experts relied to reach their competing conclusions suggests that the only way the jury could have agreed with the conclusions of Plaintiff's expert was to disregard the court's clear instructions on the meaning of "gross sales." In short, the damages awarded were far from "capable of ready ascertainment."

Turning next to Defendants' motion, the employment contract in this case states:

> In a dispute relating to the subject matter of this agreement, the substantially prevailing party shall be entitled to reimbursement from the substantially non-prevailing party, of the substantially prevailing party's legal fees, costs and expenses relating to the dispute.

There can be little doubt that Defendants substantially prevailed in this case. Defendant Spano clearly won all claims asserted against her, and equally clearly those claims were "related to the subject matter of [the employment] agreement." And by any measure Defendant Bare substantially prevailed on the claims asserted against it. *See Sweet v. St. Pierre*, 2018 VT 122, ¶ 20, 209 Vt. 1 ("[T]he trial court should apply 'a more flexible and reasoned approach focused on determining which side achieved a comparative victory on the issues actually litigated or the greater award proportionally to what was actually sought.' ") (quoting *Burton v. Jeremiah Beach Parker Restoration & Constr. Mgmt. Corp.*, 2010 VT 55, ¶ 8, 188 Vt. 583). Thus, were the contractual provision enforceable, it would be Defendants, not Plaintiff, who would be entitled to recover reasonable attorney's fees—at least on the contract.

Defendants' claimed fees are more than double Plaintiff's. The court cannot say that either the time expended or the hours charged are unreasonable; in a case such as this, playing defense is more work than playing offense. Assessing those fees against Plaintiff would thus produce the untoward result of visiting upon Plaintiff—who, it will be recalled, did prevail on at least some of her statutory claims and so is entitled to recover her fees and expenses—a fee award that would swallow not only her statutory fee award but her damages award and statutory penalty.

Plaintiff argues that this result "would be contrary to public policy, as it would override the fees award scheme set out by the legislature in 21 V.S.A. § 347." Plaintiff's Sur-Reply at 1. She provides no authority for this argument; indeed, there is none in Vermont law. Caselaw from without Vermont, however, persuades the court that our Supreme Court, given the opportunity, would conclude that enforcing a contractual provision at odds with the statute violates the public policy inherent in the statute. In *Dane-Elec Corp., USA v. Bodokh*, for example, California's intermediate appellate court concluded, "unless the trial court finds the wage claim was brought in bad faith, [California's substantially similar analog to 21 V.S.A. § 347] prohibits, as a matter of law, an award of attorney fees to a prevailing party for successfully defending a wage claim that overlaps with claims subject to a contractual prevailing party attorney fees provision." 248 Cal. Rptr. 3d 163, 172 (Cal. Ct. App. 2019). The court reasoned, "[c]ourts have uniformly recognized that such unilateral fee-shifting statutes 'reflect a considered legislative judgment that prevailing defendants should not receive fees.' " *Id.* at 171. (citation omitted). Thus, "to permit a prevailing defendant . . . to recover attorney fees incurred in defending a wage claim . . . would frustrate the Legislature's intent by turning a unilateral fee-shifting statute into a reciprocal one." *Id.* at 172. And in another context, the U.S. Supreme Court has held, "FLSA rights [(which include a mandatory attorney's fee award to a prevailing plaintiff)] cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) (citation omitted). On the strength of this reasoning, a federal appeals court has held, again in a slightly different context, "FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." *Silva v. Miller*, 307 Fed. App'x 349, 351 (11th Cir. 2009) (per curiam) (unpublished).

While the federal caselaw applying the fee-shifting provision in the FLSA does not directly address contractual fee-shifting provisions, the principles on which those cases rest apply with full force here. The Vermont legislature has made a clear policy determination that to ensure the enforcement of employees' rights under Vermont's wage and hour statutes, an employee who sues for

and recovers unpaid wages is entitled both to a statutory penalty and reasonable attorney's fees. Whether the employee "substantially prevailed" plays no part in the analysis. Unless the suit is brought in bad faith, to allow a contractual provision to shift the attorney's fee burden onto the employee's shoulders would frustrate this policy determination. Thus, the court is confident that, given the opportunity, our Court would join the California appellate court and prohibit the enforceability of the contractual fee-shifting provision in this case.

**ORDER**

The court grants Plaintiff's motion in part and denies' Defendants'. The court will amend the judgment to include attorney's fees in the amount of $43,061.85 and expenses and costs in the amount of $12,143.93. In its discretion, the court declines to award prejudgment interest.


Electronically signed pursuant to V.R.E.F. 9(d): 4/24/2025 1:49 PM

_____
Samuel Hoar, Jr.
Superior Court Judge