Filed 2/4/22  Harris v. Powerdrive Oil and Gas Company CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHEN T. HARRIS et al., | |
| Cross-complainants and Appellants, | G059623 |
| v. | (Super. Ct. No. 30-2017-00933404) |
| POWERDRIVE OIL AND GAS COMPANY LLC et al., | O P I N I O N |
| Cross-defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Craig L. Griffin, Judge.  Affirmed.

Bewley, Lassleben & Miller, Leighton M. Anderson and David A. Brady for Cross-complainants and Appellants.

Clifford & Brown, Donald T. Oldaker and John R. Szewczyk for Cross-defendants and Respondents.

\*          \*          \*

This is an appeal from the trial court's decision to grant, in part, a special motion strike under Code of Civil Procedure section 425.16[1] (the anti-SLAPP statute). Cross-defendants, and respondents Powerdrive Oil & Gas Company LLC (PDOG) and Powerdrive Energy Services Company (PDES) (collectively Powerdrive) moved to strike a cause of action for breach of fiduciary duty from the second amended cross-complaint filed by cross-complainants, and appellants Stephen T. Harris, HB-1, LLC, and HOC Operating, LLC, also known as HOC of California, LLC (HOC) (collectively the HB-1 parties). The trial court struck five paragraphs from the second amended cross-complaint set forth under the heading "Facts Common to All Claims," claiming Powerdrive committed "Fraud on the Court" through its earlier litigation conduct. These paragraphs were incorporated by reference into the HB-1 parties' breach of fiduciary duty claim. The court granted the anti-SLAPP motion as to these five paragraphs only and awarded Powerdrive $2,335 in attorney fees. The HB-1 parties now appeal.

Because the breach of fiduciary duty claim included exceedingly broad language alleging that "[e]ach and every act" by Powerdrive "was in breach of their fiduciary duties," we must conclude that intentionally or not, the HB-1 parties managed to include a claim of protected activity within that cause of action's scope, thereby triggering the anti-SLAPP statute. Because the alleged conduct, as the HB-1 parties admit, was entirely based on court filings, it was barred by the litigation privilege. We therefore affirm the order granting the anti-SLAPP motion in part. We also find no abuse of discretion by the court in awarding Powerdrive attorney fees on the anti-SLAPP motion.

---

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

# I

## FACTS

This case has a complex history, which we summarize as briefly as possible. Up until 2006, Harris was the principal owner of two corporations, Energy Development Corporation (Energy) and South Coast Oil Corporation (South Coast). According to a declaration filed by Harris, these two corporations acquired, among other things, old and disused oil wells in Huntington Beach. In 2006, Energy and South Coast filed bankruptcy proceedings.

During those proceedings, Harris was contacted by Niclas Biornstad, a representative for investor Madhukar Murarka, who was interested in investing to bring the wells owned by Energy and South Coast back into operation. Eventually, they agreed upon terms, and each party nominated legal entities to be the contracting parties. Harris nominated HB-1, and Murarka formed and designated PDOG. HB-1 was designated as the company to hold the joint venture assets in Huntington Beach, which was an area of mutual interest (AMI) under the agreement the parties eventually executed. HB-2 LLC (HB-2), which was not yet formed, was designated to hold assets in a second area of mutual interest (AMI-2).

Paul Langland, Harris's attorney and designated manager of HB-1, and Murarka, on behalf of PDOG, signed a letter of agreement (the agreement) in November 2015. The agreement began: "[T]his letter sets forth the terms under which PowerDrive Oil and Gas Company, LLC . . . shall become a share owner of HB 1 LLC . . . and HB 2 . . . through the acquisition, lease, and/or farm-in of: Bankruptcy estates, development of lands and assets, oil fields, prospects, drill sites, mineral and surface ownership, oil and gas leases, non-participating royalty and royalty interests, the drilling of oil, gas and geothermal test wells, development wells, lateral extensions and redrills; for acquisition or lease pipelines, equipment, trucks and trailers, rigs and oilfield tools (hereinafter shall

3

be referred to as 'L&L'), within two Areas of Mutual Interest (herein referred to as 'AMI 1' and 'AMI 2 . . .')."

The specifics of the agreement are not something we need address here. Other agreements between the parties followed. In June 2016, Powerdrive prevailed as the successful bidder in a bankruptcy auction relating to South Coast and Energy, spending approximately $2.2 million to acquire those company's assets. The bankruptcy court approved the sale.

Multiple disputes arose regarding the rights and duties of the parties. One point of contention was Powerdrive's insistence on an amendment to the agreement after a competing party expressed interest in buying the assets of South Coast and Energy during the bankruptcy proceedings. Harris characterized this amendment as "imposed" on him "under duress."

In 2017, Powerdrive filed a complaint against the HB-1 parties and others alleging intentional fraud and concealment, breach of fiduciary duty, unfair competition, trespass, conversion, trespass to chattels, interference with contract, interference with prospective economic advantage, misappropriation of business opportunity, trade libel, and breach of contract. The complaint sought specific performance of the agreement and its amendment, declaratory relief, dissolution of the joint venture and accounting, monetary damages, injunctive relief. The essence of the complaint was that Langland and Harris, among others, had formulated a plan or conspiracy to cheat Powerdrive of the benefits of its purchase of the assets of Energy and South Coast, and to undermine and damage Powerdrive's ownership's interest.

Early in the case, Powerdrive sought injunctive relief to prevent the HB-1 parties from interfering with its operations while the case was pending. The court ultimately granted the preliminary injunction.

The HB-1 parties filed an initial cross-complaint, which included a cause of action for breach of fiduciary duty as the seventh cause of action. The same cause of

4

action appeared in HB-1's amended cross-complaint and the operative second amended cross-complaint.

In the second amended cross-complaint, for the first time, the HB-1 parties included the following in the section of the cross-complaint entitled "Facts Common to All Claims":

"29. *Fraud on the Court.* In the Complaint in this action, and in sworn testimony, PDOG and its agents or representatives have asserted that the demand for amended terms of the Agreement were necessitated by a change in the amount of funds needed to purchase the assets from the bankruptcy trustee. *Those representations of fact, as made to this Court in this action, have knowingly been false.* In truth and in fact, the negotiation record between Murarka and Harris includes the express proposal that the Amendment would not be required if Harris would pay for Murarka's legal bills to a bankruptcy-law attorney of $100,000. Cross-defendants and each of them invented the excuse regarding the funds needed to purchase the assets to conceal the bad faith refusal to perform the original terms, which was asserted at the time of maximum leverage in order to force a renegotiation of those terms.

"30. Plaintiffs, at Murarka's direction and control, further engaged in a fraud on the Court by mispresenting facts at the time of seeking equitable relief at the outset of this case, including facts regarding their own intentions and purposes. The Court's first introduction to this case arose when both plaintiffs, each alleging an interest in the subject matter of the action, sought interim equitable relief in the form of a TRO and preliminary injunction expressly 'to maintain a *status quo* that will protect all parties' rights by enjoining [d]efendants from engaging in further destructive and unlawful "self-help," as [the parties] work through the issues framed by the complaint.' Ex Parte Application (etc.), dated July 31, 2017, at 5 . . . . That same application squarely represented to this Court that the relief sought would not result in 'significant legal harm' to the [defendants], since 'any amount [to which] defendants might be entitled . . . can be

5

calculated with certainty and . . . fully accounted for . . . .' [Citation.] A supplemental brief further argued that the parties were members of a joint venture to which fiduciary duties applied, including duties not to compete with the joint venture. Plfs.' Mem. of Pts. & Auth. In Reply to Opp. (etc.), dated September 16, 2017, at 12, lines 3-8. The theory of the complaint and the accompanying injunction application was that Harris, with the assistance of others, was engaged in 'destructive and unlawful "self-help"' by acquiring assets in derogation of PDOG's purported exclusive right to hold and operate oil field assets in the 'Townlot' fields of Huntington Beach.

"31. In reliance on those claims, the Court granted a preliminary injunction against Harris and the other defendants, restraining them from '[i]nterfering with, obstructing, hindering, preventing, harassing, or delaying [POG or PES] from accessing, occupying, operating, maintaining and utilizing the surface of subsurface of [the land and facilities associated with wells designated as SCOC ## 21 40, and 41].' Order Granting App. for Prelim. Inj., filed October 10, 2017, [¶] 11 A. Other provisions of the order restrained Harris and others similarly from interference with PDOG's *or PDES's* operation of other Huntington Beach wells, which were likewise subject to the joint venture agreement.

"32. In effect, the Court relied for preliminary injunction purposes on the representation and assurance that although Harris had been engaged in 'self-help,' *PDOG was willing in good faith to hold the assets for the benefit of tile joint venture 'as [the parties] work through the issues framed by the complaint.'* Ex Parte Application (etc.), supra, at 5. Likewise, the Court presumably believed that the relief would not result in 'significant legal harm' to the Harris parties, since '[a]ny amount [to which] defendants might be entitled . . . can be calculated with certainty and . . . fully accounted for . . . .' Ex Parte Application (etc.), supra, at 18. But, those representations to the Court were never honored by PDOG or PDES or by Murarka as their alter ego and Manager.

6

"33. Instead, plaintiffs actually used the Court's process to secure sole and undisputed control over assets contractually committed to the joint venture, intending (as Murarka admitted at his deposition, see infra) to operate them for their own account." (Boldfacing and underlining omitted.)

These five paragraphs were incorporated by reference into the seventh cause of action for breach of fiduciary duty (the fiduciary duty claim). In addition to other motions, the Powerdrive parties moved to strike and the fiduciary duty claim in its entirety, including the five paragraphs quoted above, pursuant to the anti-SLAPP statute. Powedrive also sought $2,335 in attorney fees and costs.

Ultimately, the court granted the motion in part, striking paragraphs 29 through 33 but denying the motion as to the remaining parts of the cause of action. The court also awarded $2,335 in attorney fees to Powerdrive.

II

DISCUSSION

The only issues in this appeal are whether the trial court properly struck paragraphs 29 through 33 of the cross-complaint and awarded Powerdrive attorney fees on its anti-SLAPP motion.

*The Anti-SLAPP Statutory Framework and Standard of Review*

The anti-SLAPP statute states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage

7

of the case. (See *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2, disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.)

An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

To determine whether an anti-SLAPP motion should be granted or denied, the trial court engages in a two-step process. "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).)'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)

If that threshold is met, courts then look to the second step, determining whether the plaintiff has demonstrated a probability of prevailing on the merits. To do so, the plaintiff must state and substantiate a legally sufficient claim (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122-1123), thereby

8

demonstrating the case has at least "'"'minimal merit.'"'" (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1105.)

On appeal, "[w]e review an order granting an anti-SLAPP motion de novo, applying the same two-step procedure as the trial court." (*Cole v. Patricia A. Meyer & Associates, APC*, *supra*, 206 Cal.App.4th at p. 1105.) In conducting our review, "[w]e consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) As the California Supreme Court has noted, by its plain language the anti-SLAPP statute is to be "'construed broadly'" to achieve its stated ends. (*Equilon Enterprises v. Consumer Cause, Inc*., *supra*, 29 Cal.4th at pp. 59-60.)

*Protected Activity*

The anti-SLAPP statute includes within its ambit "any written or oral statement or writing made before a . . . judicial proceeding . . . (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ." (§ 425.16, subd. (e).) The trial court noted in its order: "The [cross-complaint's] allegations in ¶¶ 29 -33 under the heading 'Fraud on the Court' claim that [Powerdrive] made knowingly false representations to the court in the complaint in this case and in seeking injunctive relief, and that [Powerdrive] 'used the Court's process to secure sole and undisputed control over assets contractually committed to the joint venture . . . for their own account.' [The fiduciary duty claim] incorporates by reference the 'Fraud on the Court' allegations and then alleges that by taking exclusive possession of 'assets belonging to the joint venture, cross-defendants converted them to their own use,' and thereafter 'negligently or recklessly maintained and operated the assets,' causing injury to the Cross-Complainants['] interest. [The fiduciary duty claim] is thus premised at least in part upon conduct of [Powerdrive] in seeking and obtaining

9

injunctive relief in this litigation, and the conduct constituting the protected activity is the wrong complained of [sections] 425.16 (e)(1) and (2) thus apply here."

The HB-1 parties admit paragraphs 29 through 33 "unquestionably referred to litigation conduct," but argue that neither the fiduciary duty claim nor any of its other claims arose from anything Powerdrive said, in the form of communicative or petitioning conduct, but from its actions. They correctly point out there is a distinction between activities that form the basis for a claim and those that lead to the activity that created liability or provide evidentiary support for it.

But their choice to incorporate litigation conduct into the fiduciary duty claim is highly problematic. Paragraph 127, part of the fiduciary duty claim, alleged: "*Each and every act* and practice of cross-defendants and each of them, including Roes 21through 100, inclusive, was in breach of their fiduciary duties to cross-complainants and each of them." (Italics added.) By including such a broad allegation, when they had incorporated their claims of litigation misconduct by reference, the HB-1 parties opened the door to this motion and closed it on any argument that the fiduciary duty claim did not "arise" from those allegations, at least in part. There is no way to interpret "[e]ach and every act" other than to include the claims of litigation misconduct among the acts the HB-1 parties alleged were a breach of Powerdrive's fiduciary duty.

Put another way, the claims of litigation misconduct formed part of the basis for the fiduciary duty claim. "'The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach.'" (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 645-646.) A fiduciary relationship is "'"any relation existing between parties to a transaction wherein one of the parities is in duty bound to act with the utmost good faith for the benefit of the other party."'" (*Wolf v. Superior Court* (2003) 107 Cal. App. 4th 25, 29-30.) Committing "Fraud on the Court" to gain an advantage over a joint venturer could (absent the litigation privilege) state a claim for a breach of fiduciary duty.

10

The fiduciary duty claim may also allege other wrongs, but intentionally or not, due to its overbroad language, it also managed to allege a claim about Powerdrive's litigation conduct by stating Powerdrive was dishonest with the court in its papers. Such conduct is protected by section 425.16, subdivision (e)(1) and (2).

For the same reasons, we reject any claim that paragraphs 29 through 33 were "'merely incidental,'" "'collateral,'" or only "provide[d] context." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394.) The trial court correctly found that the first prong of the anti-SLAPP statute was met.

*Minimal Merit*

Once we determine that the anti-SLAPP statute applies, the burden then shifts to the plaintiff to demonstrate a probability of prevailing "'by showing that the claim has "minimal merit."'" (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 537.) If the plaintiff does so, the motion to strike under the anti-SLAPP statute must be denied. To establish the requisite probability of prevailing, the plaintiff must state and substantiate a legally sufficient claim. (*Briggs v. Eden Council for Hope & Opportunity*, *supra*, 19 Cal.4th at pp. 1122-1123.) "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

The trial court concluded that the conduct described in paragraphs 29 through 33 was covered by the litigation privilege, and we agree. Indeed, the HB-1 parties spend less than a page of their opening brief in a half-hearted attempt to argue otherwise. In their reply brief, the HB-1 parties return to the question of whether paragraphs 29 through 33 formed the basis for a "claim" without addressing the litigation privilege.

11

Powerdrive's actions during litigation were protected by the litigation privilege, Civil Code section 47, subdivision (b). As pertinent here, that section provides: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding . . . ." (Civ. Code, § 47, subd. (b).) "The principal purpose of [Civil Code] section 47[, subdivision (b),] is to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.) "Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution. [Citations.] Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation . . . ." (*Id.* at pp. 211-212.) It is beyond dispute that papers filed in support of a motion are covered by the litigation privilege. Accordingly, the HB-1 parties did not meet their burden to show minimal merit.

*Attorney Fees*

In its opening brief, the HB-1 parties argue that Powerdrive's partial victory of striking the five disputed paragraphs did not entitle it to the very minimal attorney fee award of $2,335. In support of this claim, they cite two cases for the proposition that "an exception" to the statutory language which states that a prevailing defendant "shall" be awarded its attorney fees exists when the results of the motion were insignificant and did not result in a practical benefit.

In support of this argument, they cite two cases. In the first, *Richmond Compassionate Care Collective v. 7 Stars Holistic Foundation* (2019) 33 Cal.App.5th 38, the court states: "A defendant who partially succeeds on an anti-SLAPP motion generally is considered a prevailing party and is entitled to fees (and costs) unless the results of the motion were so insignificant that defendant did not achieve any 'practical

12

benefit' from bringing the motion . . . ." (*Id.* at p. at 45.) The HB-1 parties quote this part of the sentence, while leaving out the next part: "a determination that lies within the 'broad discretion' of the trial court." (*Ibid.*) The quotation about "'broad discretion'" comes from the other case the HB-1 parties cite, *Mann v. Quality Old Time Serv., Inc.* (2006) 139 Cal.App.4th 328. They quote that case without including the language about the court's discretion. The HB-1 parties do mention that "there is nothing in the record to suggest that the trial judge exercised his discretion to determine that [Powerdrive] were not the prevailing parties," but this turns the standard of review on its head. Where a decision is in the court's discretion, it will only be overturned if an abuse of that discretion is shown by the party challenging it. (*Id.* at pp. 340-341.) The HB-1 parties do not offer any argument to support the contention that the trial court's decision was an abuse of its discretion, and we would not find such an abuse even if they had. Accordingly, we find no error.

III

DISPOSITION

The order is affirmed. Powerdrive is entitled to its costs on appeal and may file any appropriate motion for attorney fees on appeal in the trial court.

MOORE, ACTING P. J.

WE CONCUR:

FYBEL, J.

MARKS, J.*

*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13