Filed 3/15/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| RICHMOND COMPASSIONATE CARE COLLECTIVE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>7 STARS HOLISTIC FOUNDATION et al.,<br><br>        Defendants and Respondents; | A154581<br><br>(Contra Costa County Super. Ct. No. MSC1601426) |

Plaintiff appeals from an order that awarded attorney fees to defendants who were partly successful in their anti-SLAPP motion, contending only that the fees were not proper, as plaintiff's claim was based on the Cartwright Act. We disagree, and we affirm.

**BACKGROUND**

**The General Setting**

In 2011, pursuant to Richmond Marijuana Ordinance No. 28-10 NS (ordinance), the City of Richmond issued a medical marijuana collective permit to Richmond Compassionate Care Collective (RCCC). It was the first collective to obtain such a permit.

Three other permits were later issued over the ensuing years, to: (1) Richmond Patients Group (RPG), acting through principals William and Alexis Koziol and Darrin Parle; (2) Holistic Healing Collective, Inc. (Holistic), acting through its principal Rebecca Vasquez; and (3) 7 Stars Holistic Foundation, Inc. (7 Stars), acting through its principal Zeaad M. Handoush.

1

The ordinance had been adopted in 2010, and was from time to time amended, including in 2011, 2012, and 2014, when the ordinance was amended to reduce the number of dispensary permits from six to three, and also to provide that if a permitted dispensary did not open within six months after the issuance of a permit, the permit would expire and become void. RCCC ended up losing its permit.

**The Proceedings Below**

In July 2016, RCCC filed a complaint alleging a single cause of action, violation of the Cartwright Act. The complaint named 11 defendants: RPG, Holistic, 7 Stars, William and Alexis Koziol, Parle, Vasquez, Handoush, Lisa Hirschhorn, Antwon Cloird, and Cesar Zepeda. As indicated, eight of the defendants were the three collectives and their principals. As to the other three, Hirschhorn was alleged to be an agent of the other defendants (except Cloird and Zepeda), and Cloird and Zepeda were alleged to be the agents of the other defendants (except Hirschhorn).

The complaint alleged in essence that defendants, acting in concert, encouraged and paid for community opposition to RCCC's applications before the Richmond City Council and also purchased a favorably zoned property.

In October 2016, represented by five separate counsel, defendants filed a joint special anti-SLAPP motion to strike pursuant to Code of Civil Procedure section 425.16 (section 425.16). The motion was heard by the Honorable Barry Goode, a most experienced superior court judge, and on December 5, he granted the special motion to strike as to certain allegations related to protected activity, specifically statements made before the Richmond City Council and defendants' actions in opposing RCCC's application. As Judge Goode summed up: "In short, the allegations of the complaint related to efforts to mobilize public opposition to Plaintiff's application and to obtain a decision from the Richmond City Council all relate to protected activity (prong one) and Plaintiff has not shown a probability of prevailing on the merits as to them (prong two); they shall be stricken from the complaint. The allegations of the complaint related to the purchase of real property and to price fixing do not relate to protected activity and shall not be stricken from the complaint."

So, the outcome of the anti-SLAPP motion could be said to be mixed:  discrete portions of the complaint related to mobilizing public opposition and dealing with the Richmond City Council were stricken, while the aspect of the complaint based on defendants' conspiracy to tie up code-compliant properties so that RCCC could not open any location in Richmond would remain in the complaint.

Following the ruling on the anti-SLAPP motion, in February 2017, two groups of defendants filed separate motions for attorney fees, as described in detail below.  On March 16, Judge Goode held a hearing on the motions for attorney fees, at which he expressed his concern about the effect of his ruling.[1]  Suffice to note here that Judge

---

[1] Judge Goode expressed his concern this way:

"I grappled with this a long time, trying to figure out just what to do, because this is not the old model, if you will, on a motion to strike where a SLAPP motion is filed, a lawsuit is disposed of or a cause of action is disposed of and now you award attorneys fees.

"The easiest model is the motion is filed.  It is successful.  The defendant succeeds in having the case go away, and then there's attorneys' fees brought.

"Once we had *Baral* say that you can strike allegations, rather than an entire cause of action, and put it into the lawsuit, it's a little hard to figure out what we do with attorneys' fees at this point in time.  The nearest I can figure out was I'm supposed to determine what the practical effect of the motion was, but there's very little in the way of guidance out there in cases to tell me what to do with this.

"We have a very, very large fee request.  As Mr. Foreman points out, the case is continuing on the same claim that was made before, in the sense it remains an anti-trust case, although, as defendants point out, what had been in the complaint—at least the principal allegations are gone.

"Then, when I try to figure out what the practical effect of that is, Mr. Foreman has, in his opposition papers, the SLAPP motion, a whole new set of allegations which may be more complicated, more expensive, more difficult to discovery, and I wonder whether there is a pyrrhic victory.

"I'm struggling to figure out what we've got here and how I gauge what the degree of success was.  When I'm faced with attorneys' fees of $165,000, that's an extraordinary amount for a case that still remains."

Goode essentially took the fee motions off calendar, declining to rule on them until the pleadings had been resolved.

Meanwhile, RCCC filed a first amended complaint and then a second, to both of which demurrers were sustained with leave to amend. Both demurrers were ruled on by Judge Goode.

In August 2017, RCCC filed its third amended complaint (TAC). The complaint was 85 paragraphs, and also included 17 exhibits consisting of text images, emojis, and notes of defendant Hirschhorn—a defendant, it developed, who had turned on the other defendants and was now assisting RCCC.

On August 31, 7 Stars filed its own anti-SLAPP motion directed to the TAC, along with a demurrer. The motion asked the court to strike the claim for violation of the Cartwright Act, and also identified 28 specific paragraphs that 7 Stars claimed involved protected activity or appeared to incorporate by reference allegations of protected activity. The motion was set for hearing on October 12.

While 7 Stars' motion was pending, the RPG defendants filed their own anti-SLAPP motion, identifying specific allegations they sought to have stricken.

On September 28, RCCC filed its opposition to the 7 Stars anti-SLAPP motion, included within which was a declaration of Hirschhorn testifying as to the facts that underlay the TAC. The declaration was 10 pages long, and set forth in vivid detail what the defendants did to RCCC, detail that supported Hirschhorn's testimony of a conspiracy among defendants to harm RCCC—their "war on RCCC."

7 Stars' anti-SLAPP motion came on for hearing on October 12 before Judge Goode, who had issued a tentative ruling denying the motion. At the conclusion of the argument, Judge Goode took 7 Stars' motion under submission, to be continued to November 16, when RPG's anti-SLAPP motion was set.

On December 27, Judge Goode filed his order that denied 7 Stars' anti-SLAPP motion in its entirety. Doing so, Judge Goode noted as follows: "In their moving memorandum, 7 Stars and Handoush failed to provide legal authorities to show that a large number of allegations identified in this motion were protected activity. Some of the

4

allegations identified by these defendants could well be protected activity, but defendants were tasked with presenting facts and law to show how the allegations were protected activity. In the moving papers, defendants did not adequately complete this task. Defendants cite many additional authorities in their reply, however, the court will not consider legal authorities first cited in the reply that could have been cited in the moving papers. In addition, with few exceptions, the alleged conduct is incidental to RCCC's Cartwright Act claim and 7 Stars and Handoush have not shown otherwise. Therefore, 7 Stars and Handoush have not shifted the burden and this motion is denied."

Addressing RPG's motion, Judge Goode concluded that it was "granted in part and denied in part," going on to strike paragraphs 37, 38, 54, 55, 56, 58 and 62 of the TAC.

On January 4, 2018, 7 Stars appealed the denial of the anti-SLAPP motion. In an opinion filed February 21, 2019, we affirmed the order denying the anti-SLAPP motion. (*Richmond Compassionate Care Collective v. 7 Stars Holistic Foundation, Inc.* (Feb. 21, 2019, A153305) __ Cal.App.5th __.)

**The Motions for Attorney Fees**

As noted above, following Judge Goode's original order granting in part the anti-SLAPP motion filed jointly by defendants, various sets of defendants filed motions for attorney fees, which motions were essentially tabled by Judge Goode until the pleadings were finally sorted out.

Following Judge Goode's December 27, 2017 order, the issue of attorney fees arose again when, in a January 9, 2018 case management conference, Judge Goode noted it would be a waste of judicial resources to decide 7 Stars' pending motion for attorney fees before its appeal on his denial of its special motion to strike is decided. As he put it, "The other thing that troubles me . . . normally I'm supposed to consider the practical effect of having won the motion. . . . And, if that's the case . . . how can I call this motion unless I know what the outcome of the appeal is?" Nevertheless, Judge Goode permitted all defendants to file what was in essence a second motion for attorney fees.

As applicable here, on January 28, 7 Stars filed a second motion for attorney fees, asking for fees for their first special anti-SLAPP motion and for its joinder in RPG's motion, seeking fees in the total amount of $39,686.12. Other defendants also filed their own motions.

On March 22, RCCC opposed all motions for attorney fees.

Following 7 Stars' reply, the motions came on for hearing, following which on April 13 Judge Goode filed a lengthy order which first determined that "defendants prevailed on their" anti-SLAPP motions—a holding, we note, RCCC does not contest on appeal. Judge Goode then went on for several pages analyzing the law and the evidence to determine the amount of fees to be awarded. And then he made his award, awarding 7 Stars $11,400 in attorney fees for the first motion to strike and $4,200 for the second motion to strike, plus "fees on fees" in the amount of $7,520, for a total of $23,120. 7 Stars was also awarded costs of $688.12.[2]

On June 11, RCCC filed its notice of appeal from the April 13 order. On July 27, RCCC requested dismissal of the appeal as to all defendants except 7 Stars, and on November 18, RCCC filed its opening brief addressing only the attorney fees awarded to 7 Stars.

**DISCUSSION**

**The Governing Law**

Section 425.16, subdivision (c) provides in pertinent part that the "prevailing defendant" on an anti-SLAPP motion "shall be entitled" to recover its attorney fees. As the Supreme Court has described it, "[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131.) A defendant who partially succeeds on an anti-SLAPP motion generally is considered a prevailing party and is entitled to fees (and costs) unless the results of the motion were so insignificant that defendant did not achieve any "practical benefit" from bringing the motion, a determination that lies within the "broad discretion"

---

[2] Judge Goode awarded fees to other defendants, specifically, $79,211 to RPG, $8,170 to Cloird, and $3,060 to Holistic Healing.

6

of the trial court. (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 340 [defendants who successfully eliminated trade libel cause of action "prevailed," although defamation claim remained in the litigation].) But only those fees and costs incurred in connection with the portion of the anti-SLAPP motion that is granted may be recovered. (*Jackson v. Yarbray* (2009) 179 Cal.App.4th 75, 82.)

The determination of the legal basis for an award of attorney fees is a question of law, which we review de novo. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213–1214; *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

**Summary of RCCC's Position**

As noted, RCCC is not contesting Judge Goode's conclusion that defendants were successful in their anti-SLAPP motion. And, RCCC acknowledges, it is "not attacking the amount of fees awarded, but the legal decision awarding fees," in an argument succinctly set forth in the introduction to its brief: "Plaintiff's complaint contains a single claim for a violation of the Cartwright Act, which was not terminated by the anti-SLAPP motion. The issue of the award of attorneys' fees to a prevailing party Defendant in a Cartwright Act violation case was addressed in *Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498. *Carver* upheld the unilateral fee-shifting provision that allows an award of attorneys' fees to a prevailing plaintiff *but not* to a prevailing defendant. 'The Legislature clearly intended to give special treatment to antitrust claims under the Cartwright Act by creating this one-way fee-shifting right for a successful plaintiff but not for a defendant who successfully defends such a claim. [Citation omitted].' *Id.* at [p.] 504. This unilateral fee shifting, in plaintiff's favor, prohibits defendant from obtaining any attorneys' fees in this Cartwright Claim case." Or, as RCCC puts it later in its brief, "the fee-shifting provision under the Cartwright Act cannot be overridden by the attorneys' fee provision under the anti-SLAPP statute." We are not persuaded.

**The Attorney Fee Award Was Proper**

The Supreme Court has noted that the anti-SLAPP statute contains provisions designed to "limit the costs of defending" against a SLAPP lawsuit. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) And among those provisions is that

7

a defendant that prevails "is entitled to attorney's fees and costs." (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 322.) Here, 7 Stars prevailed—and thus should recover its fees.

Noting that the Cartwright Act permits an injured person to file suit for damages and be "awarded a reasonable attorneys' fee together with the costs of the suit" (Bus. & Prof. Code, § 16750, subd. (a)), RCCC argues that this provision prevents application of the anti-SLAPP statute, in claimed support of which RCCC relies heavily on *Carver v. Chevron U.S.A., Inc., supra,* 119 Cal.App.4th 498, which is actually the second appeal between the parties, the first of which is *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132 (*Carver*).

*Carver, supra,* 97 Cal.App.4th 132, was a case by franchise dealers against Chevron alleging claims for breach of contract, fraud, and violation of the Cartwright Act. (*Id.* at p. 136.) Following judgment for Chevron, the trial court awarded attorney fees and costs under an attorney fees provision in the franchise lease agreement and Code of Civil Procedure section 998. (*Carver,* at p. 136.) The appellate court reversed. As applicable here, the court held the attorney fee provision in the franchise lease agreement could not be construed to cover Chevron's cost of defending against the Cartwright Act claims, since the attorney fee clause of the Cartwright Act is a unilateral fee clause that refers to an award to a prevailing plaintiff, which by its plain language does not create any reciprocal right on the part of a prevailing defendant. (*Carver,* at pp. 147–148.) The court noted that Code of Civil Procedure section 1021 allows " ' "compensation of attorneys" ' " to be " ' "left to the agreement . . . of the parties" ' " except " '*as attorney's fees are specifically provided for by statute,*' " and that the Cartwright Act provides a one-way authorization for attorney fees (*Carver*, at p. 147; see Bus. & Prof. Code, § 16750); and, the court reasoned, allowing the private agreement of the parties to authorize fees for a defendant would undermine the public purpose of having a one-way fee award for Cartwright Act claims. (*Carver*, at p. 148.) *Carver* is not applicable here.

It is perhaps enough to note that *Carver* is not a SLAPP case. And there is nothing in *Carver*, nor for that matter the plain language of the Cartwright Act, that forecloses a

successful anti-SLAPP defendant from obtaining the attorney fees to which it "shall" be entitled under section 425.16. As Judge Goode described it, a description with which we agree: "The Court can interpret statutes, Business and Professions Code section 16750(a) and [Code of Civil Procedure] 425.16(c), as allowing for attorney fees—one for a prevailing defendant and one for a prevailing plaintiff—without altering the public policy in either statute. A defendant may be awarded its attorney fees for a successful (or partially successful) special motion to strike by showing that the complaint involves protected activity, *provided* plaintiff fails to show a probability of prevailing on the merits. Thus, a defendant who receives attorney fees for a special motion to strike a Cartwright claim has stricken a claim that lacks merit and such a claim or allegations could not be used by a plaintiff to prevail in a Cartwright claim." We also agree with Judge Goode's observation that RCCC does not "explain why [the] Court should place the public policy in favor of trade regulation above the public policy of protecting First Amendment activities."

Although the Legislature's purpose in enacting the Cartwright Act was to encourage enforcement of the Act, nothing in the law "suggests this legislative purpose should override the Legislature's desire," expressed in the later-enacted section 425.16, to discourage SLAPPs. (See *Bates v. Presbyterian Intercommunity Hospital, Inc.* (2012) 204 Cal.App.4th 210, 219.)

The other two cases cited by RCCC—*Wood v. Santa Monica Escrow Co.* (2007) 151 Cal.App.4th 1186 and *Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047—are equally inapplicable. *Wood* followed *Carver* in denying contractual fees for hours inextricably intertwined with defense of a cause of action alleging financial abuse of an elder; and *Turner* held that the unilateral fee-shifting provision under the Unruh Act prohibited defendant from recovering fees. Neither had anything to do with SLAPP.

There is, in sum, no conflict between the Cartwright Act and the anti-SLAPP statute, and both can be applied. (See *Stone Street Capital, LLC v. California State*

*Lottery Com.* (2008) 165 Cal.App.4th 109, 119 [implied repeal disfavored and the two acts must be irreconcilable; courts are bound, if possible, to maintain the integrity of both statutes]; see also *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 554 [upholding award of fees to defendants in Cartwright Act action].)

## DISPOSITION

The order is affirmed.  7 Stars shall recover costs on appeal.

 

 

_____
Richman, Acting P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.

*Richmond Compassionate Care v. 7 Stars Holistic Foundation et al.* (A154581)

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Honorable Barry P. Goode |
| Attorney for Plaintiff and Appellant Richmond Compassionate Care Collective: | Foreman & Brasso, Ronald D. Foreman; |
| Attorney for Defendants and Respondents 7 Stars Holistic Foundation, Inc.; Zeaad Handoush: | Losch & Erlich, Joseph J. Erlich, Mark Meyer |