Filed 07/17/23  Sinsay v. Bank of America CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BERNABE CANTADA SINSAY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> BANK OF AMERICA, N.A., et al., <br><br> Defendants and Respondents. | H049378, H049889 <br> Santa Clara County <br> Super. Ct. No. 20CV374613 |

Bank of America, N.A. (Bank of America), filed a collection action against Bernabe Cantada Sinsay to recover $13,031 in unpaid credit card debt.  A month prior to trial, Bank of America filed and served a declaration pursuant to Code of Civil Procedure section 98,[1] which allows a party to offer a declaration into evidence in lieu of testimony at trial, provided certain conditions are met.  The declarant, Melinda K. Stephenson, attested that she was an officer of the bank and would be available for service of process during the relevant time period at her attorneys' California offices, which she stated would be sufficient to compel her appearance at trial.  Bank of America later dismissed the action before trial commenced.

Shortly thereafter, Sinsay sued Bank of America, Stephenson and related parties, alleging that the filing of Stephenson's declaration violated the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) (Civ. Code, §§ 1738, 1788.88) and the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.).  According to Sinsay,

_____

[1] Unspecified statutory references are to the Code of Civil Procedure.

Stephenson's declaration falsely stated that Stephenson was an officer of the bank and could be compelled to personally attend trial pursuant to section 1987, subdivision (b), because she was in fact a resident of North Carolina.

The defendants filed a special motion to strike the complaint pursuant to section 425.16, the anti-SLAPP statute.[2] They argued the causes of action arose from protected petitioning activity and Sinsay had failed to carry his burden of demonstrating the claims had the requisite merit, because he had submitted no evidence showing Stephenson was not an officer or that her statement in the declaration regarding service was false. The trial court agreed and granted the motion in its entirety.

On appeal, Sinsay concedes that his causes of action arise from protected activity, but argues he carried his burden of demonstrating the claims have the requisite merit. Specifically, he contends that Stephenson was not an officer and that her statement regarding service was false because, pursuant to section 1989, she would not have been obliged to appear at trial upon service at the attorneys' California offices. According to Sinsay, those material misrepresentations constituted violations of the Rosenthal Act and UCL. He also appeals the trial court's subsequent order awarding attorney fees to the defendants.

We conclude that any misrepresentation in the Stephenson declaration was immaterial and therefore did not constitute a violation of the Rosenthal Act or the UCL. Because Sinsay failed to carry his burden of demonstrating a likelihood of prevailing on the merits on his causes of action, the trial court did not err in granting the motion to strike. We also conclude the trial court did not abuse its discretion awarding attorney fees. We affirm.

---

[2] An anti-SLAPP motion is a "special motion to strike a 'strategic lawsuit against public participation (SLAPP).' " (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 773-774.)

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

### A. Bank of America's collection action

On March 10, 2017, Bank of America filed a collection action against Sinsay in Santa Clara County Superior Court case No. 17CV309297 (collection action) to recover $13,031 in unpaid principal, interest and fees due under a credit account. The matter was deemed a limited civil case pursuant to section 85.

Trial in the collection action was set for February 3, 2020. One month before that date, Bank of America filed and served a declaration of Melinda K. Stephenson in lieu of personal testimony at trial (Stephenson declaration), pursuant to section 98.[4] The Stephenson declaration included the following language relevant to this appeal: "On information and belief, and as an Officer of Plaintiff, any service of process on the Declarant pursuant to C.C.P. §98(a) may be effected pursuant to C.C.P. §1987(b) by providing notice to Plaintiff's attorney, Nelson & Kennard, Attorneys at Law, 5011 Dudley Blvd., Bldg. 250, Bay G, McClellan, California 95652, which address I am informed is within 150 miles of the place of trial. The Declarant is thus available, through counsel, to accept service of process in accordance with C.C.P. 1987(b) at the

---

[3] We draw our facts from the pleadings and supporting declarations submitted in the trial court. We accept Sinsay's factual assertions as true for the purpose of resolving whether the trial court erred in granting the anti-SLAPP motion and consider only whether any contrary evidence from respondents establishes their entitlement to prevail as a matter of law. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

[4] As discussed further below, section 98 provides that, "in limited civil cases, a sworn written statement, the contents of which otherwise might constitute inadmissible hearsay, may sometimes be admitted on the same terms applicable to live witness testimony. One such scenario arises when a party offers into evidence [a declaration] and 'a copy . . . has been served on the party against whom it is offered at least 30 days prior to the trial, together with a current address of the affiant that is within 150 miles of the place of trial, and the affiant is available for service of process at that place for a reasonable period of time, during the 20 days immediately prior to trial.' " (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 848 (*Meza*), quoting § 98, subd. (a).)

place(s) identified above for a reasonable period of time during the 20 days immediately prior to trial."

Prior to commencement of trial, Bank of America dismissed the collection action in response to Sinsay's claims of hardship.

## B. Sinsay's complaint

In December 2020, Sinsay filed the initial complaint in this action. He filed the operative first amended complaint in April 2021 (complaint), naming Bank of America, Stephenson, Nelson & Kennard and Robert Kennard—the law firm and attorney who represented Bank of America in the collection action—as defendants (hereinafter, respondents). The complaint brought a putative class action and asserted one cause of action for violation of Business and Professions Code section 17200, the Unfair Competition Law (UCL), and one cause of action for violation of the Rosenthal Act, Civil Code sections 1788 through 1788.33.

Specifically, the complaint alleged that Stephenson is not actually an officer, director, or managing agent for Bank of America within the meaning of section 1987, subdivision (b), contrary to the assertions in her declaration. Similarly, it alleged that Stephenson was not reasonably available for service of process at the address listed in her declaration, within the meaning of section 98, because she in fact was, at all relevant times, a resident of North Carolina.

Further, it alleged that respondents' use of the Stephenson declaration was invalid because Stephenson is not a resident of California; for that reason, the declaration was "false, misleading, fraudulent, and unconscionable." In addition, it alleged Sinsay was unaware the Stephenson declaration was invalid and, as a result, he was required to engage legal counsel to represent him in the collection action, thereby incurring out-of-pocket pecuniary loss and actual damages in the form of attorney fees and costs.

According to the complaint, it is also respondents' "standard practice" to use such declarations in lieu of personal testimony at trial, which falsely represent or imply that a

4

nonresident declarant is an officer and may be compelled to personally attend trial pursuant to section 1987, subdivision (b).

The first cause of action for violation of the UCL alleged that respondents made false and misleading statements with the intent to induce reliance by Sinsay and the class, as well as California Superior Court judges and the general public. In addition, it alleged that those acts constitute unlawful, fraudulent, and unfair business practices because the conduct was unlawful, immoral, unfair, unethical, oppressive, unscrupulous, unconscionable, or substantially injurious to Sinsay and members of the class.

The second cause of action for violation of the Rosenthal Act alleged that the Stephenson declaration falsely represented or implied that Stephenson was an officer and could be compelled to personally attend trial pursuant to section 1987, subdivision (b), which constituted a violation of Civil Code section 1788.17.

### C. Anti-SLAPP motion

On May 21, 2021, respondents filed a special motion to strike pursuant to section 425.16. They argued that the action was based entirely on protected speech and petitioning activity—namely, the sworn Stephenson declaration made in furtherance of litigation. In addition, they argued Sinsay could not demonstrate that his claims had the requisite merit to survive the motion because he lacked standing and the Stephenson declaration was truthful. With respect to standing, respondents argued Sinsay had suffered no injury at all, and thus could not demonstrate a concrete and particularized injury of sufficient magnitude, as required to state a claim under either the UCL or Rosenthal Act. With respect to the Stephenson declaration, respondents argued that Stephenson was an officer and Sinsay had introduced no evidence to the contrary, and that she had truthfully attested she was available for service of process in California, regardless of her state of residence.

In support of their motion, respondents submitted declarations from Stephenson and Robert Scott Kennard, their attorney in the collection action. In her declaration in

5

support of the motion, Stephenson stated, among other things, that she had been an officer of the bank since 2011, and that as an officer she had the authority to execute instruments that bind the bank, and the responsibility to provide testimony on behalf of the bank, including by signing affidavits and declarations.

Sinsay opposed the motion. He conceded that his claims arose from protected activity, but argued he had shown a likelihood of prevailing. Specifically, he argued that whether Stephenson met the criteria to be an officer within the meaning of section 1987, subdivision (b), "is a disputed factual issue on which Sinsay is entitled to discovery, and one that cannot be resolved as a matter of law on an anti-SLAPP motion based on a single self-serving [d]eclaration." In addition, he argued that, even if Stephenson was an officer, she was not amenable to California service of process because she was not a resident. Accordingly, Sinsay argued that for Stephenson to state or imply to the contrary was "per se false" and rendered her declaration "invalid and confusing to California consumers."

In support, Sinsay submitted a declaration in which he stated, among other things, that: (1) he never agreed that Stephenson could appoint her attorneys to accept service; (2) when he received the Stephenson declaration, he did not know how to respond and was therefore required to engage legal counsel, "thereby incurring out-of-pocket pecuniary losses and actual damages in the form of attorney fees and costs"; and (3) he was unaware that a declaration pursuant to section 98 is invalid where the declarant is a nonresident of California.

The trial court granted respondents' motion to strike in August 2021. It determined Sinsay had not carried his burden of demonstrating a probability of prevailing on the merits of his claims for multiple reasons. First, Sinsay had not shown that respondents had made a materially false or misleading statement. He had submitted no evidence in support of his allegation that Stephenson was not an officer of the bank, and had provided no legal authority in support of his contention that Stephenson could not

6

authorize her attorneys to accept service on her behalf and therefore could not be compelled to appear and testify at trial. Second, the court held Sinsay had failed to demonstrate that he had standing. Specifically, he had failed to show that his lack of knowledge about how to respond to the Stephenson declaration and his subsequent retention of counsel had anything to with the alleged Rosenthal Act violations. Finally, with respect to the UCL cause of action, Sinsay had failed to show that he had incurred legal fees as a result of the alleged misrepresentations in the Stephenson declaration. The court added that respondents were entitled to recover attorney fees and costs pursuant to section 425.16, subdivision (c)(1).

Sinsay timely appealed the trial court's order (H049378).

### D. Attorney fees

In October 2021, respondents filed two motions to recover attorney fees and costs pursuant to section 425.16, subdivision (c)(1), one from Nelson & Kennard and Robert Scott Kennard (Kennard defendants) for $52,035 and one from Bank of America and Stephenson (bank defendants) for $50,000.

Sinsay opposed the motions, arguing that the Rosenthal Act supersedes the anti-SLAPP statute's mandatory attorney fees provision, and respondents had not made, and cannot make, the required showing of bad faith. Specifically, Sinsay contended that Civil Code section 1788.30, subdivision (c) applies, which provides that reasonable attorney fees "may be awarded to a prevailing creditor upon a finding by the court that the debtor's prosecution or defense of the action was not in good faith." Lastly, Sinsay argued that, in the alternative, the trial court should substantially reduce the requested amounts if it awards any fees.

The trial court granted the motions, awarding $48,335 to the Kennard defendants and $50,000 to the bank defendants. It determined that the Rosenthal Act and anti-SLAPP statute are not in conflict, so the mandatory provision of section 425.16, subdivision (c)(1) applies.

7

Sinsay timely appealed (H049889).

This court ordered the two appeals to be considered together for purposes of oral argument and disposition.[5]

## II. DISCUSSION

### A. *Appeal of order granting anti-SLAPP motion (H049378)*

Sinsay argues on appeal that he carried his burden of demonstrating a probability of prevailing on the merits. Specifically, he contends he showed that (1) respondents falsely claimed Stephenson was an "officer" of Bank of America within the meaning of section 1987, subdivision (b), and that she could be compelled to appear and testify at trial; and (2) Sinsay incurred actual damages as a result of the Stephenson declaration and therefore demonstrated he had standing to bring his claims.

Respondents argue that (1) Sinsay failed to show Stephenson was not a bank officer; (2) even if she was not an officer, Sinsay could not show that her declaration contained a material misstatement because she consented to service at the attorneys' office in California, and Sinsay never actually attempted to serve her; (3) Sinsay failed to submit any evidence showing he incurred damages as a result of the alleged false representations; and, (4) Sinsay's claims are barred by the litigation privilege of Civil Code section 47, which precludes civil claims based on communications made in connection with litigation. Accordingly, respondents argue, Sinsay failed to carry his burden of demonstrating a probability of prevailing on the merits, and the anti-SLAPP motion was properly granted.

---

[5] The record does not include a judgment following the order awarding fees. We deem the order to incorporate a judgment and review it accordingly. (*Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396.)

8

### 1. Applicable law and standard of review

#### a. Anti-SLAPP

An anti-SLAPP motion allows a defendant to seek "early judicial screening of legal claims targeting free speech or petitioning activities." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880-881.) The statute is " 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." ' " (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008-1009 (*Bonni*), quoting *Wilson*, *supra*, at pp. 883-884; § 425.16, subd. (b)(1).)

Resolution of an anti-SLAPP motion entails a two-step process. "First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)

The second prong of the anti-SLAPP analysis has been described as a " 'summary-judgment-like procedure.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Id.* at pp. 384-385.)

In this context, " 'the burden of establishing a probability of prevailing is not high.' " (*Issa v. Applegate* (2019) 31 Cal.App.5th 689, 702; see also *Whitehall v. County*

*of San Bernardino* (2017) 17 Cal.App.5th 352, 363.)  "Indeed, ' "to satisfy due process, the burden placed on the plaintiff must be compatible with the early stage at which the motion is brought and heard [citation] and the limited opportunity to conduct discovery." ' " (*Jenni Rivera Enterprises*, *LLC v. Latin World Entertainment Holdings*, *Inc.* (2019) 36 Cal.App.5th 766, 781, quoting *Hardin v. PDX*, *Inc.* (2014) 227 Cal.App.4th 159, 166; see also *Integrated Healthcare Holdings*, *Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 530 ["We are inclined to allow the plaintiff . . . a certain degree of leeway in establishing a probability of prevailing on its claims due to 'the early stage at which the motion is brought and heard [citation] and the limited opportunity to conduct discovery.' "].)

We review de novo the grant or denial of an anti-SLAPP motion.  (*Park*, *supra*, 2 Cal.5th at p. 1067.)

### b.  *Rosenthal Act*

Sinsay's Rosenthal Act claim is based on an alleged violation of Civil Code section 1788.17, which provides that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of [15 U.S.C. sections 1692b to 1692j, inclusive] . . . and shall be subject to the remedies in [15 U.S.C. section 1692k] . . . ."  (Civ. Code, § 1788.17.)  The Rosenthal Act, through Civil Code section 1788.17, incorporates by reference the federal Fair Debt Collection Practices Act's (FDCPA) requirements " 'and makes available the FDCPA's remedies for violations.' " (*Aguilar v. Mandarich Law Group*, *LLP* (2023) 87 Cal.App.5th 607, 621 (*Mandarich Law Group*), quoting *Riggs v. Prober & Raphael* (9th Cir. 2012) 681 F.3d 1097, 1100.) "A violation of any of these FDCPA provisions is per se a violation of the Rosenthal Act. [Citation.]  A Rosenthal Act claim premised on a violation of the federal FDCPA, however, 'remains a state claim.' " (*Mandarich Law Group*, *supra*, at p. 621, quoting *Alkan v. Citimortgage*, *Inc.* (N.D.Cal. 2004) 336 F.Supp.2d 1061, 1065.)

10

Whether Sinsay has shown that his Civil Code section 1788.17 claim has the requisite merit thus depends on whether the alleged violation of the underlying FDCPA provisions " ' "is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [Sinsay] is credited." ' " (*Mandarich Law Group*, *supra*, 87 Cal.App.5th at p. 622, quoting *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.)

"The federal FDCPA regulates the conduct of debt collectors by prohibiting 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.' (15 U.S.C. § 1692e.) It is a violation of the FDCPA to falsely represent 'the character, amount, or legal status of any debt' (15 U.S.C. § 1692e(2)(A)) or to 'use . . . any false representation or deceptive means to collect or attempt to collect any debt.' (*Id.*, § 1692e(10).) A false or misleading statement is not actionable under the FDCPA unless it is material. (*Afewerki v. Anaya Law Group* (9th Cir. 2017) 868 F.3d 771, 773 (*Afewerki*) ['To constitute a violation of the FDCPA, a false statement must be "material." '], citing *Donohue v. Quick Collect, Inc.* (9th Cir. 2010) 592 F.3d 1027, 1033 (*Donohue*)." (*Mandarich Law Group*, *supra*, 87 Cal.App.5th at p. 622.)

"The FDCPA is a strict liability statute that does not ordinarily require proof of an intentional violation." (*Mandarich Law Group*, *supra*, 87 Cal.App.5th at p. 622, citing *Tourgeman v. Collins Financial Services, Inc.* (9th Cir. 2014) 755 F.3d 1109, 1119.) The analysis is objective and considers whether the " 'least sophisticated debtor would likely be misled by a communication.' " (*Mandarich Law Group*, at p. 622.) " 'The "least sophisticated debtor" standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." [Citation.] The standard is "designed to protect consumers of below average sophistication or intelligence," or those who are "uninformed or naive," particularly when those individuals are targeted by debt collectors.' " (*Ibid.*, quoting *Gonzales v. Arrow Financial Services, LLC* (9th Cir. 2011) 660 F.3d 1055, 1061-1062.) "At the same time, the standard 'preserv[es] a quotient of

11

reasonableness and presum[es] a basic level of understanding and willingness to read with care.' " (*Gonzales*, at p. 1062.) " 'In assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response.' " (*Mandarich Law Group*, at p. 622, quoting *Donohue v. Quick Collect, Inc.*, *supra*, 592 F.3d at p. 1034.) "A logical ' "corollary" to the least sophisticated debtor standard' under the FDCPA is the requirement that a misrepresentation must be material to be actionable." (*Mandarich Law Group*, at p. 626, quoting *Afewerki v. Anaya Law Group*, *supra*, 868 F.3d at p. 775.)

### c. UCL

" 'The purpose of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." ' [Citation.] To that end, the UCL ' "provides an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices." ' [Citation.] 'The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200.)' " (*Prager University v. Google LLC* (2022) 85 Cal.App.5th 1022, 1040-1041.)

### d. Section 98, subdivision (a)

Section 98 is part of the "Economic Litigation for Limited Civil Cases," a "subset of civil actions, known as limited civil cases, in which the amount in controversy does not exceed $25,000 and the parties seek only certain types of relief. (See Code Civ. Proc., § 85.)" (*Meza*, *supra*, 6 Cal.5th at p. 848.) It provides in pertinent part: "A party may, in lieu of presenting direct testimony, offer the prepared testimony of relevant witnesses in the form of affidavits or declarations under penalty of perjury. The prepared testimony may include, but need not be limited to, the opinions of expert witnesses, and testimony which authenticates documentary evidence. To the extent the contents of the

12

prepared testimony would have been admissible were the witness to testify orally thereto, the prepared testimony shall be received as evidence in the case, provided that either of the following applies: [¶] (a) A copy has been served on the party against whom it is offered at least 30 days prior to the trial, together with a current address of the affiant that is within 150 miles of the place of trial, and the affiant is available for service of process at that place for a reasonable period of time, during the 20 days immediately prior to trial[;] [¶] (b) The statement is in the form of all or part of a deposition in the case, and the party against whom it is offered had an opportunity to participate in the deposition." (§ 98.)

Section 98 provides a limited exception to the hearsay rule, predicated on the party "against whom a sworn statement is offered having an opportunity to examine the maker of the statement under oath." (*Meza*, *supra*, 6 Cal.5th at p. 849.) To ensure that opportunity, section 98 "requires the provision of an address within 150 miles of the place of trial at which the affiant can be lawfully served with a form of process designed to secure his or her appearance at trial, at which time the affiant can be called as a witness." (*Meza*, *supra*, at p. 849.) "Although one such type of process, a subpoena ad testificandum (i.e., a subpoena to testify), typically must be personally served, there are exceptions to this general rule, and at least some prospective witnesses can be called to appear at trial through another form of process that does not require personal service. Section 98[, subdivision] (a) therefore does not categorically require that *all* affiants be personally present for service at an address within 150 miles of the place of trial for a reasonable period during the 20 days prior to trial. Such personal presence is required only if it is necessary for lawful service, at the specified location, of process that directs the affiant to appear at trial, under the standard rules prescribing the pertinent types of process and how such process is to be served." (*Ibid.*)

13

### 2. *Analysis*

Sinsay's central argument is that the Stephenson declaration was materially false and misleading—thereby violating the Rosenthal Act and the UCL—because she was *not* an officer within the meaning of section 1987, subdivision (b), and, as a resident of North Carolina, she could *not* be lawfully served at the attorneys' office in California "to secure her appearance at trial." We address these in turn.

### a. *Officer*

As noted above, Stephenson stated in her declaration that she was an officer of Bank of America, and that any service of process could be made on her pursuant to section 1987, subdivision (b). That section sets forth exceptions to the general requirement that, in order for a party to compel a person to appear at a civil trial, that person must be personally served with a subpoena. One such exception is for "anyone who is an officer, director, or managing agent" of a party or person for whose immediate benefit an action is prosecuted or defended. (§ 1987, subd. (b); *Meza*, *supra*, 6 Cal.5th at pp. 855-856.) Such a party or person "may be summoned to appear at trial through service 'upon the attorney of that party or person' of 'written notice requesting the witness to attend . . . a trial,' with service to occur no less than '10 days before the time required for attendance unless the court prescribes a shorter time.' " (*Meza*, *supra*, at pp. 855-856, quoting § 1987, subd. (b).) In such circumstances, " '[t]he giving of the notice shall have the same effect as service of a subpoena on the witness . . . .' " (*Meza*, *supra*, at p. 856.) However, "[t]he notice to attend mechanism does not oblige a person who resides outside of this state to appear at trial, a limitation that applies to subpoenas, as well. (See § 1989.)" (*Ibid*.)

Sinsay alleged in the complaint that Stephenson was not an officer within the meaning of section 1987, subdivision (b). In opposing the motion to strike, Sinsay merely recited that allegation, but offered no evidence in support of the claim. As noted above, a reviewing court must determine whether the plaintiff has shown, by admissible

evidence, a probability of prevailing on the merits.  (§ 425.16, subd. (b).)  If the plaintiff cannot make that showing, the court must strike the claim.  (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)

By submitting no evidence in support of his claim, Sinsay has failed to carry his burden on this issue.  Sinsay argues, as he did in opposing the motion to strike in the trial court, that whether Stephenson meets the criteria to be an officer within the meaning of section 1987, subdivision (b) "is a disputed factual issue on which Sinsay is entitled to discovery, and one that should not have been resolved as a matter of law on an anti-SLAPP motion based on a single self-serving [d]eclaration."  But Sinsay ignores his evidentiary burden here—a plaintiff " 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Sweetwater Union High School Dist*. *v*. *Gilbane Building Co*. (2019) 6 Cal.5th 931, 940.)  Sinsay has offered none.

Moreover, he has offered no explanation as to why he was not able to conduct discovery or seek relief from the automatic stay of discovery pursuant to section 425.16, subdivision (g).  We recognize that, in analyzing the second prong in an anti-SLAPP context, " '[t]he burden of establishing a probability of prevailing is not high.' "  (*Issa v*. *Applegate*, *supra*, 31 Cal.App.5th at p. 702.)  However, the leeway afforded a plaintiff in this context is not unlimited.  Sinsay has failed to carry his burden of providing evidence to support his claim that Stephenson was not an officer within the meaning of section 1987, subdivision (b).

### b.  *Service at attorneys' California offices*

Sinsay argues that, even if Stephenson was an officer, her declaration was false because, as a resident of North Carolina, she was not actually amenable to California process.  His theory is that nonresident witnesses, including those specified in section 1987, subdivision (b), are not obliged to attend trial as witnesses, pursuant to section 1989.  That section provides:  "A witness, including a witness specified in subdivision (b)

15

of Section 1987, is not obliged to attend as a witness before any court, judge, justice or any other officer, unless the witness is a resident within the state at the time of service." (§ 1989.)

Sinsay relies on *Amoco Chemical Co. v. Certain Underwriters at Lloyd's of London* (1995) 34 Cal.App.4th 554. In that case, the plaintiff served a notice to attend trial on the custodian of records of the overseas defendants by serving their attorneys of record pursuant to section 1987, subdivision (b). (*Amoco*, at p. 557.) The defendants contended they were not obliged to comply with the notice, pursuant to section 1989. (*Amoco*, at p. 557.) The court agreed and held that section 1989 "means what it says—a witness is not obliged to appear in court in California unless [he or she] is a resident of the state at the time of service." (*Amoco*, at p. 555.) For that reason, the "notice to attend trial and bring documents (§ 1987, subds. (b), (c)) served on the custodian of records of a nonresident party is void and unenforceable." (*Ibid*.) As the court explained, "the geographical reach of the notice to attend is explicitly limited by section 1989 . . . . [¶] It follows ineluctably that the notice to attend was void on its face, that no objection was required, and that the orders must be reversed. (*Twin Lock, Inc. v. Superior Court* (1959) 52 Cal.2d 754, 761-762 [no form of compulsion, including sanctions, may be used by the court to compel a party who is an out-of-state resident to come to California].)" (*Amoco, supra*, at p. 559.)

As Sinsay notes on appeal, the trial court did not address *Amoco* or section 1989 in its order. Instead, it held that Sinsay had "ignore[d] the evidence that Stephenson has authorized the Bank's attorney to accept service and that her duties for the Bank include appearing in person to testify when section 98 notice is served." The court stated, "[t]he statutory purpose of ensuring that the party against whom a section 98 declaration is offered will have the opportunity to examine the maker of the statement under oath is amply met by Stephenson's amenability to service through the Bank's counsel and her

16

undisputed commitment to appear if notice were given." But the court did not address the language in section 1989 or *Amoco* discussed above.

Nor do respondents address *Amoco* on appeal. Instead, they argue that because Stephenson voluntarily consented to California service of process in a sworn declaration to the court, her status as a nonresident is immaterial. As support, they cite two cases which we find unpersuasive: *Rockefeller Technology Investments* (*Asia*) *VII v. Changzhou SinoType Technology Co.*, *Ltd.* (2020) 9 Cal.5th 125 (*Rockefeller*), and *Harrington v. Superior Court of County of Placer* (1924) 194 Cal. 185 (*Harrington*).

In *Rockefeller*, the parties had entered into a contract in which they agreed to submit to the jurisdiction of California courts, resolve disputes through California arbitration, and provide notice and service of process to each other "through Federal Express or similar courier." (*Rockefeller*, *supra*, 9 Cal.5th at p. 132.) The California Supreme Court explained that the "narrow question" it addressed was whether the Hague Service Convention preempted the parties' notice agreement, if the Convention provides for a different method of service. (*Ibid.*) The court held that, "because the parties' agreement constituted a waiver of formal service of process under California law in favor of an alternative form of notification, the Convention does not apply." (*Ibid.*)

The California Supreme Court emphasized that its conclusions with respect to California law were narrow—when parties agree to California arbitration and their agreement specifies the manner in which they shall be served, "that agreement supplants statutory service requirements and constitutes a waiver of formal service in favor of the agreed-upon method of notification." (*Rockefeller*, *supra*, 9 Cal.5th at p. 145.) By contrast, the court noted that where an arbitration agreement does not specify a method of service, the statutory requirements of section 1290.4, subdivision (b) or (c)—which set forth requirements for serving a petition to vacate an arbitration award—would apply. (*Rockefeller*, *supra*, at pp. 144-145.) Notably, the court added that it expressed "no view with respect to service of process in other contexts." (*Id.* at p. 145.)

17

But *Rockefeller* did not address section 1989 or whether a nonresident's declaration, asserting amenability to service at her attorneys' California offices in compliance with section 1987, subdivision (b), is sufficient to compel her appearance at trial.

*Harrington* does not support respondents' position, either. In that case, the court considered whether a party's appearance in a condemnation action, despite not having been served with a summons, was sufficient to give the court jurisdiction to act. (*Harrington*, *supra*, 194 Cal. at p. 188.) The court held that it was, noting that a party "may voluntarily submit himself to the jurisdiction of the court, or may, by failing to seasonably object thereto, waive his right to question jurisdiction over him." (*Id*. at pp. 188-189.) But we are not considering whether Stephenson is subject to the jurisdiction of the court, but rather whether service at her attorneys' offices in California pursuant to section 1987, subdivision (b) is sufficient to compel her appearance at trial, notwithstanding section 1989.

Respondents also argue that Stephenson "was free to waive her rights under [section 1989], a defensive statute designed to protect out-of-state witnesses like her from being called into California state court." But the question is whether filing and serving a declaration such as Stephenson's had the legal effect of negating section 1989—that is, whether a nonresident's declaration that service at her designated attorneys' California offices will oblige her to appear at trial actually means that she would be legally obliged to appear. Respondents have not provided any authority in support of their position.

The California Supreme Court's opinion in *Meza* is instructive on this point as well. The court cautioned that "[t]he notice to attend mechanism" of section 1987, subdivision (b) "does not oblige a person who resides outside of this state to appear at trial, a limitation that applies to subpoenas, as well," citing section 1989. (*Meza*, *supra*, 6 Cal.5th at p. 856.) In considering the defendants' arguments about the interplay between section 1989 and section 98, the court stated, "even if we were to assume that defendants

18

are correct in viewing the geographical limitations of section 1989 as applicable to section 98[, subdivision] (a) affiants . . . [o]ur review of the history of section 98 yields no significant indication that the Legislature was particularly concerned with encouraging the use of affidavits from out-of-state residents." (*Meza*, *supra*, at p. 865.) The court added that, "[t]his case does not provide an occasion for determining whether, or under what circumstances, an affiant could be 'available for service of process' under section 98[, subdivision] (a) if the relevant parties and persons in a particular case agree upon service arrangements that deviate from statutory norms." (*Id*. at p. 865, fn. 6.)

In short, the California Supreme Court did not decide in *Meza* that section 1989 applies to section 98, subdivision (a) declarants, although it appeared to suggest that the Legislature likely did not intend to exempt the latter from the former. Such a construction would be consistent with *Amoco*, as well.

In any event, we need not resolve this question here. As we explain, *post*, we determine that, even if Stephenson's statement in her declaration was incorrect—because she could not be compelled to appear at trial pursuant to section 1987, subdivision (b), through service at her designated attorneys' offices in California—it was not a material misrepresentation, which is required to establish a violation of the Rosenthal Act.

### c. Materiality

As summarized above, " '[i]n assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response.' " (*Mandarich Law Group*, *supra*, 87 Cal.App.5th at p. 622.) A "material misrepresentation is one that could 'cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort.' " (*Id*. at p. 626, quoting *Tourgeman v. Collins Financial Services*, *Inc*., *supra*, 755 F.3d at p. 1121.) A "misrepresentation that is immaterial and thus not actionable under the

19

FDCPA fails to support a prima facie violation of [Civil Code] section 1788.17." (*Mandarich Law Group*, at p. 627.)

Sinsay argues that materiality is a fact-specific inquiry that should ordinarily be left to the trier of fact, and "is not a factor to determine an anti-SLAPP motion." But, as this court recently held, the question of materiality is an issue of law for the court to determine. (*Mandarich Law Group*, *supra*, 87 Cal.App.5th at pp. 629-630.) That objective standard lends itself to independent assessment by the court and does not turn on the credibility of extrinsic evidence. (*Ibid*.) Even in the context of an anti-SLAPP motion, where the court does not weigh evidence or resolve conflicting claims, the court "can properly ascertain the plaintiff's showing at the second step . . . without weighing the evidence or resolving factual disputes," where the alleged misrepresentation is not subject to conflicting factual claims. (*Id*. at p. 630.)

Sinsay also argues that the misrepresentations here *were* material. He relies on the standard articulated above that a material misrepresentation is one that could cause the "least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." He contends that the misrepresentations in the Stephenson declaration rendered it invalid and confusing to the least sophisticated consumer.

However, Sinsay does not explain in any way how or why the Stephenson declaration would cause the least sophisticated debtor to chart any particular course of action at all, much less one to his or her disadvantage. In arguing that he has standing to bring his Rosenthal Act cause of action, Sinsay claims the Stephenson declaration caused him to retain counsel. Yet, even if we were to construe that as an argument that the hypothetical least sophisticated debtor would have retained counsel upon receiving the Stephenson declaration, we are unable to perceive how that would constitute a disadvantageous course of action.

As discussed, *ante*, "section 98's limited exception to the hearsay rule is predicated on the party or parties against whom a sworn statement is offered having an opportunity to examine the maker of the statement under oath." (*Meza*, *supra*, 6 Cal.5th at p. 849.) Even if we were to accept Sinsay's argument that the Stephenson declaration was incorrect and invalid, the result would be that the declaration could not be offered into evidence at trial. Sinsay has not explained how that would prompt the least sophisticated debtor to pursue a disadvantageous course of action.

Sinsay has not carried his burden of demonstrating a probability of prevailing on the merits of his Rosenthal Act cause of action.

For that reason, Sinsay has also failed to carry his burden with respect to his UCL cause of action, which he concedes is based on, and derivative of, his Rosenthal Act cause of action.

Because we determine that Sinsay failed to carry his burden in these respects, we need not reach the parties' alternative arguments presented on appeal.

### B. Appeal of order granting attorney fees motions (*H049889*)

Sinsay argues on appeal that: (1) the attorney fees provisions in the Rosenthal Act prevail over those in the anti-SLAPP statute, and the trial court incorrectly determined that the latter applied; and (2) even if the anti-SLAPP statute's attorney fees provision did apply, the trial court abused its discretion in awarding $50,000 to the bank defendants and $48,335 to the Kennard defendants.

#### 1. Applicable law and standard of review

Section 425.16, subdivision (c)(1) provides that a prevailing defendant on a special motion to strike "shall be entitled to recover" attorney fees and costs. (§ 425.16, subd. (c)(1).) The purpose of this provision is to " 'compensat[e] the prevailing defendant for the undue burden of defending against litigation designed to chill the exercise of free speech and petition rights.' " (*Maleti v. Wickers* (2022) 82 Cal.App.5th

21

181, 232, quoting *Barry v. State Bar of California* (2017) 2 Cal.5th 318, 327-328.)

"[T]he statute reflects a clear preference for awarding fees and costs to prevailing defendants." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1018.) The language of section 425.16, subdivision (c)(1) is mandatory and a trial court generally must award fees to a defendant who successfully moves to dismiss a cause of action. (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 605.)

The Rosenthal Act contains its own attorney fees provision as well. Civil Code section 1788.30, subdivision (c) provides: "In the case of any action to enforce any liability under this title, the prevailing party shall be entitled to costs of the action. Reasonable attorney's fees, which shall be based on time necessarily expended to enforce the liability, shall be awarded to a prevailing debtor; reasonable attorney's fees may be awarded to a prevailing creditor upon a finding by the court that the debtor's prosecution or defense of the action was not in good faith." (See also *Gouskos v. Aptos Village Garage, Inc.* (2001) 94 Cal.App.4th 754, 764 [award of fees under Rosenthal Act unquestionably discretionary].)

When a special and general statute are in conflict, the former controls. (*Agricultural Labor Relations Board v. Superior Court* (1976) 16 Cal.3d 392, 420; § 1859.) Whether statutes are in conflict and, if so, which one controls, present questions of law which we review de novo. (*Richmond Compassionate Care Collective v. 7 Stars Holistic Foundation* (2019) 33 Cal.App.5th 38, 45 (*Richmond*) [determination of legal basis for an award of attorney fees is a question of law]; *Department of Fair Employment & Housing v. Cathy's Creations, Inc.* (2020) 54 Cal.App.5th 404, 412.)

We review the amount of the trial court's fee award for abuse of discretion. (*Pasternack v. McCullough* (2021) 65 Cal.App.5th 1050, 1055.)

## 2. Analysis

### a. Conflicting statutes

Sinsay contends that the two statutes are in conflict. We note first that there do not appear to be any cases that have considered a potential conflict between these two statutes. " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.]' [Citation.] ' "When the language of a statute is clear, we need go no further." [Citation.] But where a statute's terms are unclear or ambiguous, we may "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " (*People v. Harrison* (2013) 57 Cal.4th 1211, 1221-1222.) "Generally, the most reliable indicator of legislative intent is the words of the statute. [Citation.] Accordingly, we turn first to the plain language of the statutes at issue." (*Tan v. Appellate Division of Superior Court* (2022) 76 Cal.App.5th 130, 136.)

Taking that approach here, we determine the statutes are not in conflict. The plain language of section 425.16, subdivision (c)(1) provides that a prevailing defendant on a special motion to strike shall be entitled to recover its attorney fees and costs. (§ 425.16, subd. (c)(1); *Jackson v. Yarbray* (2009) 179 Cal.App.4th 75, 92 [only those fees and costs related to the special motion to strike, not the entire action, may be recovered].) Civil Code section 1788.30, subdivision (c) is also clear on its face—reasonable attorney fees may be awarded to a prevailing creditor upon a finding by the court that the debtor's prosecution or defense of the action was not in good faith. (Civ. Code, § 1788.30, subd. (c).)

Section 425.16, subdivision (c)(2) also expressly enumerates certain other statutes which are *not* subject to the anti-SLAPP statute's mandatory fees provision. (§ 425.16,

23

subd. (c)(2) [excluding Gov. Code, §§ 11130, 11130.3, 54960, 54960.1].) However, those exceptions do not include Civil Code section 1788.30, subdivision (c).

Accordingly, we need not look to any other extrinsic aids to interpret these statutes and determine that they are not in conflict. Section 425.16, subdivision (c)(1) is limited to the scope of a defendant's special motion to strike. Civil Code section 1788.30, subdivision (c), by contrast, applies to the entire action brought pursuant to the Rosenthal Act. Thus, it is reasonably possible to harmonize these provisions without distorting their apparent meaning. (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960; see also *Richmond*, *supra*, 33 Cal.App.5th at p. 45.)

Sinsay claims a conflict exists because the Rosenthal Act "was designed specifically so that merely failing to prevail would not automatically subject a consumer to paying the creditor's attorney fees . . . ." But allowing a prevailing defendant to recover fees on a special motion to strike, in an action brought pursuant to the Rosenthal Act, does not mean that merely failing to prevail in the action would automatically subject a debtor to paying attorney fees. If the defendant creditor did not bring a successful special motion to strike, yet prevailed on the merits, section 425.16, subdivision (c)(1) would not be available to the creditor.

Because we determine there is no conflict between the statutes, and section 425.16, subdivision (c)(1) applies here, we need not address Sinsay's argument that his action was brought in good faith.

### b. *Reasonable amount of attorney fees*

Sinsay argues that, even if section 425.16, subdivision (c)(1) does apply, the trial court abused its discretion by not substantially reducing the requested fees.

" '[T]he fee setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. . . . The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided.

24

[Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary.' " (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1134 [permitting use of lodestar adjustment method for § 425.16], quoting *Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) "The reasonableness of attorney fees is within the discretion of the trial court, to be determined from a consideration of such factors as the nature of the litigation, the complexity of the issues, the experience and expertise of counsel and the amount of time involved." (*Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 448.)

Applying those standards here, we determine the trial court did not abuse its discretion in awarding $50,000 to the bank defendants and $48,335 to the Kennard defendants. The court first determined that counsel's effective hourly rates of $377.54, $370, and $270 for the various attorneys were reasonable, citing authority which provides that the determination of the market rate is generally based on the rates prevalent in the community where the court is located. (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 700; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

Next, the trial court determined that the $50,000 sought by the bank defendants for 132.5 hours of work was reasonable, citing authority for the proposition that a trial court may award fees solely on the basis of the experience and knowledge of the trial judge. (*East West Bank v. Rio School Dist.* (2015) 235 Cal.App.4th 742, 750; *In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 300-301 [when trial court is informed of extent and nature of services rendered, it may rely on its own experience and knowledge in determining reasonable value; in many cases, trial court will be aware of nature and extent of attorney's services from the proceedings reflected in the file].)

The trial court also determined that the time spent by the Kennard defendants was reasonable, given the nature of the issues presented. The court relied on authority with analogous facts, and specifically identified the comparable hours spent, and tasks performed, which supported the fee awards in those cases.

25

Sinsay argues on appeal that the hours spent by the bank defendants were "outrageous," "grossly excessive," "*literally* incredible," and "patently unreasonable." However, beyond the labels applied, Sinsay does not explain how the trial court's determination constituted an abuse of discretion, or analogize to any applicable authority. We conclude the trial court applied the proper standards and considered the proper factors and therefore did not abuse its discretion in determining the amount of fees.

Sinsay also argues that the trial court abused its discretion because the bank defendants did not substantiate their hours or fees with any time records or other documented evidence supporting counsel's hourly rates. However, as the trial court properly explained in its order, "[c]ourts have consistently concluded that attorney billing records are not required to support a fee motion." (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1324 ["It is not necessary to provide detailed billing timesheets to support an award of attorney fees under the lodestar method."]; *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269 [no legal requirement that attorney supply billing statements to support claim for attorney fees].) Instead, as the court further explained, "an award of attorney fees may be based on counsel's declarations, without production of detailed time records." (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.) Here, the bank defendants satisfied that standard by submitting a declaration from their counsel describing the tasks performed and time spent on their motion.

## III.   DISPOSITION

In appeal H049378, the order granting the motion to strike is affirmed.

In appeal H049889, the order awarding attorney fees and costs is affirmed.

Respondents are awarded their costs on appeal.

26

_____

                                 Wilson, J.

WE CONCUR:

_____

                                 Bamattre-Manoukian, Acting P.J.

_____

                                 Danner, J.

<u>Sinsay v. Bank of America, N.A., et al.</u>
H049378, H049889